**J.D. MARSHALL INTERNATIONAL, INC., a corporation, Plaintiff,**

v.

**REDSTART, INC., a corporation; John Ewing, an individual; and Satish Mathur, an individual, Defendants.**

No. 86 C 371.

United States District Court, N.D. Illinois, E.D.

Feb. 24, 1987.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This action originated as a cross-claim in a suit filed by the Utica Tool Company ("Utica Tool") against J.D. Marshall International, Inc. ("JDM") and Redstart, Inc. ("Redstart") in the United States District Court for the District of South Carolina. Utica Tool claimed it was owed some $129,-000 for merchandise sold to JDM and/or Redstart. JDM denied owing Utica Tool anything and filed a cross-claim against Redstart and two of its corporate officers, John Ewing and Satish Mathur. In count I, JDM claims that Redstart violated an agreement under which JDM purchased from Redstart certain assets and the right to conduct business under the corporate name of J.D. Marshall International, Inc. In count II, JDM claims that Redstart, Ewing and Mathur violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO").

The cross-claim was transferred to this court on Redstart's motion to dismiss or in the alternative to change venue under 28 U.S.C. § 1404(a). Defendants now move to dismiss or in the alternative to stay this action pending the outcome of arbitration. Both parties also have moved for sanctions. For the following reasons, defendants' motion to stay is granted but their motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure is denied. JDM's motion for sanctions under Rule 37 is granted.

### FACTS

The action pending here is one of several cases relating to JDM's purchase of Redstart's export management business on February 3, 1984. The pleadings now before this court provide few details concerning that transaction, but according to memoranda submitted by the parties JDM acquired certain assets from Redstart, including accounts receivable, other current assets and all property, plant and equipment. JDM also acquired agreements or other arrangements with suppliers, distributors,

Ralph A. Mantynband, Thomas Flannigan, Arvey, Hodes, Costello & Burman, Chicago, Ill., Daryl L. Williams, Boyd, Knowlton, Tate & Finlay, P.A., Columbia, S.C., for plaintiff.

Michael H. King, Jon K. Stromsta, Ross & Hardies, Chicago, Ill., for defendants.

and other business representatives. JDM agreed to assume certain of Redstart's liabilities and acquired from Redstart the exclusive right to conduct business under Redstart's then corporate name, J.D. Marshall International, Inc.

After the transaction Redstart retained accounts receivable totaling some $8.4 million. From time to time Redstart was paid for accounts receivable owned by JDM and JDM was paid for accounts receivable retained by Redstart. The purchase agreement anticipated that this would happen and after closing JDM and Redstart established a procedure for exchanging these funds.

Redstart apparently learned in mid-1984 that JDM was failing to satisfy certain of the liabilities and obligations it had assumed and that JDM had converted certain letters of credit belonging to Redstart. Redstart's position was that JDM owed it a total of about $300,000. After representatives from Redstart and JDM unsuccessfully attempted to resolve their differences Redstart allegedly resorted to self-help. Their efforts to recover the money are the basis for JDM's RICO claim.

In this suit JDM alleges that Redstart violated RICO by committing mail and wire fraud in connection with several transactions:

1) Redstart received a check for approximately $2,200 from AMF Wyott, Inc. payable to J.D. Marshall International, Inc. Redstart endorsed the check J.D. Marshall International, Inc. and deposited it in Redstart's bank account ("the Wyott transaction");

2) Marshall International Trading Co., Inc., a company controlled by Ewing, held a letter of credit from Insanova S.A., a Venezuelan company, issued by the First National Bank of Chicago. JDM was to receive approximately $240,-000 drawn on that letter of credit but Ewing diverted the funds to Redstart's bank account ("the Insanova transaction");

3) Niwa Shoji, a Japanese company, owed JDM approximately $7,000. Redstart sent a telex to Niwa Shoji causing it to transfer the money to Redstart's bank account instead of to JDM ("the Niwa Shoji transaction");

4) Redstart maintained a bank account at the First National Bank of Chicago under the name of J.D. Marshall International, Inc. without authorization. By doing so, Redstart was able to intercept two wire transfers from Alfred Kaut GMBH & Company of West Germany totaling approximately $20,000 that were intended for JDM ("the Kaut transaction");

5) Redstart received property from Utica Tool, deceiving Utica Tool into believing that it was dealing with JDM ("the Utica Tool transaction").

These transactions are currently at issue in several related proceedings between the parties. The agreement under which JDM acquired Redstart's export management business ("the purchase agreement") provided that either party could elect to arbitrate disputes arising from the agreement. On December 20, 1984, JDM filed a complaint in arbitration against Redstart before the American Arbitration Association in Chicago, Illinois. (*J.D. Marshall International, Inc. v. Redstart, Inc.*, No. 51 T 199 0016 85 S). The original complaint sought to recover funds diverted to Redstart in the Insanova transaction. On October 31, 1985, JDM amended its complaint adding claims based on the Kaut transaction, the Wyott transaction and the Niwa Shoji transaction. JDM also sought an emergency order from the arbitrators to stop Redstart from using the name J.D. Marshall International, Inc. Redstart filed an answer and counterclaim in the arbitration proceeding. Ewing and Mathur were not parties to the purchase agreement and they are not parties to the arbitration proceeding.

In addition, JDM filed suit in May 1985 against the First National Bank of Chicago ("the bank") in the Circuit Court of Cook County, Illinois, (*J.D. Marshall International, Inc. v. First National Bank of Chicago*, No. 85 CH 4286), alleging that the bank and Redstart conspired with Redstart to defraud JDM in the Insanova transac-

tion and the Kaut transaction. None of the defendants here are parties to that suit. U.S. Leasing Corporation also sued JDM and Redstart in the District Court for the Northern District of Illinois, alleging that one or both of them defaulted on an agreement to lease word processing equipment (*U.S. Leasing Corp. v. Redstart, Inc.*, No. 85 C 2128). In that case Judge Will denied JDM's motion for leave to file a cross-claim against Redstart, holding that the issue of liability on the lease as between JDM and Redstart was a matter to be arbitrated. Finally, the Utica Tool litigation is presumably still proceeding in the District of South Carolina.

### DISCUSSION

Defendants advance two arguments in support of their pending motions. First, defendants argue that JDM's complaint fails to state a RICO claim because it fails to allege an enterprise. Second, defendants argue that because identical issues are pending in other proceedings, the action here should be dismissed or stayed, Rule 11 sanctions should be imposed on JDM and Rule 37 sanctions should not be assessed against them because Ewing and Mathur failed to answer questions at their depositions. Because we are persuaded that the proceedings here should be stayed pending the outcome of arbitration, we decline to rule on Redstart's first argument, although we note in passing that JDM's RICO claim may well be in need of repleading. *See generally H.G. Gallimore, Inc. v. Abdula*, 652 F.Supp. 437, (N.D.Ill.1987).

### I. Motion to Stay

■ JDM and Redstart agree that either of them may elect to arbitrate any alleged breach of the purchase agreement or any dispute relating to its terms. Under the Federal Arbitration Act, 9 U.S.C. §§ 1–14, arbitration agreements "in any ... contract evidencing a transaction involving commerce" are "valid, irrevocable and enforceable," except in circumstances not rel-

evant here. *See* 9 U.S.C. § 2. Both parties have submitted the disputes underlying this lawsuit for arbitration, according to the terms of the purchase agreement. The applicability of the Federal Arbitration Act is not in question nor is there any doubt that the arbitration must proceed. The issue on this motion is whether this case must proceed at the same time.

Section 3 of the Arbitration Act provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

9 U.S.C. § 3. Count I of JDM's cross-claim appears to fall squarely within this provision. In that count JDM seeks to recover damages from Redstart resulting from Redstart's allegedly wrongful use of the name J.D. Marshall International, Inc. mainly in connection with maintaining certain bank accounts and receiving money intended for JDM. Count I raises breach of contract issues and JDM appears to have properly raised the same issues in the arbitration as provided by the purchase agreement. Although the parties have devoted scant attention to count I, § 3 of the Federal Arbitration Act requires that proceedings on that count be stayed pending the outcome of arbitration.[1]

■ In count II JDM alleges that defendants violated RICO by committing several predicate acts of mail fraud and wire fraud. The parties have argued at length over the arbitrability of RICO claims, but that issue is not before the court on this motion. The arbitration agreement between JDM and Redstart allows either party to elect to arbitrate disputes arising

---

**1.** Of course, there is no reason to expect that Count I cannot be fully resolved in the arbitra-

tion proceedings.

from their agreement, but the record now before the court suggests that neither party has elected to arbitrate JDM's RICO claim. None of the pleadings before the arbitrators raise RICO claims and Redstart does not now seek to compel arbitration of that claim under § 4 of the Arbitration Act. Regardless of the arbitrability of RICO claims generally, JDM's RICO claim cannot be arbitrated unless one of the parties submits it for arbitration. Moreover, the claims against Ewing and Mathur are not arbitrable because they were not parties to the arbitration agreement.

■ The decision to stay litigation on non-arbitrable claims pending the outcome of arbitration is one left to this court as a matter of its discretion. *See, e.g., Moses H. Cone Memorial Hospital v. Mercury Constr. Co.,* 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 939 n. 23, 74 L.Ed.2d 765 (1983) (stating that "it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of arbitration"). While this court does not agree with defendants' contention that the issues in count II are identical to the issues submitted for arbitration, they overlap substantially. The predicate offenses JDM alleges in its RICO claim are based entirely on transactions underlying its breach of contract claims in the arbitration proceeding.

If JDM's action here proceeds to judgment first, that judgment would have full *res judicata* and collateral estoppel effects on the arbitration, making meaningful enforcement of the arbitration agreement impossible. *See Hughes v. Paine, Webber, Jackson & Curtis, Inc.,* No. 81 C 5075, slip op. at 9 (N.D.Ill. Nov. 14, 1985) (lifting a stay of arbitration proceedings in light of *Byrd,* allowing the arbitration and litigation to proceed contemporaneously) [Available on WESTLAW, DCTU database] (LEXIS, Genfed library, Dist file). Such a result would be contrary to the strong federal policy favoring enforcement of arbitration agreements. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, ——, 105 S.Ct. 3346, 3353–55, 87 L.Ed.2d 444 (1985); *Byrd,* 470 U.S. at

219–21, 105 S.Ct. at 1241–42; *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. at 941.

■ Conversely, staying this action will not deprive JDM of a forum for its RICO claim. *See Rudell v. Comprehensive Accounting Corp.,* 802 F.2d 926, 931 & n. 5 (7th Cir.1986) ("If [plaintiffs] had raised the fraud defense in arbitration and prevailed, they would arguably be free to bring their RICO claim in the district court"). The results of the arbitration proceedings may simplify or even resolve the proceedings here, but it will be up to this court to determine the preclusive effects, if any, of the arbitration award. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 222–23, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985); *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1361–62 (11th Cir.1985) (factual findings of arbitration panel given collateral estoppel effect in subsequent RICO action). Although a stay of litigation pending arbitration is not always appropriate, *see Byrd,* 470 U.S. at 225, 105 S.Ct. at 1244 (White, J., concurring), in this case a stay will advance both the interests of judicial economy and the federal policy favoring enforcement of the arbitration agreement between JDM and Redstart. Because JDM's RICO claim is permeated with arbitrable issues, defendants' motion to stay the proceedings on that claim until those issues are resolved is granted. *See, e.g., S.A. Mineracao Da Trinadade-Samitri v. Utah Int'l Inc.,* 745 F.2d 190, 196 (2d Cir.1984); *McMahon v. Shearson/American Express, Inc.,* 618 F.Supp. 384, 389 (S.D.N.Y.1985), *rev'd in part,* 788 F.2d 94, 99 (2d Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986); *American Concept, Ltd. v. Irsay,* No. 84 C 10026, slip op. at 4–5 (N.D.Ill. Oct. 4, 1985) [Available on WESTLAW, DCTU database] (LEXIS, Genfed library, Dist file); *see also D.C. Taylor, Co. v. Dynamit Nobel of America, Inc.,* 558 F.Supp. 875, 879–80 (N.D.Ill.1982) (staying litigation of antitrust claims pending arbitration of various state law issues).

## II. Motion to Dismiss

In support of its motion to dismiss defendants argue that the pendency of other

actions involving the transactions at issue here requires dismissal under *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In *Colorado River,* the United States filed a suit in federal court claiming certain water rights, based on state and federal law. Shortly after that suit was filed, one of the defendants in federal court joined the United States as a party to ongoing state proceedings for adjudication of those water rights. The Supreme Court held that principles resting on considerations of wise judicial administration, conservation of judicial resources and comprehensive disposition of litigation justified dismissal of the federal suit. 424 U.S. at 817, 96 S.Ct. at 1246. The most important factor in that case was the clear federal policy expressed in the McCarran Amendment, 43 U.S.C. § 666, of avoiding piecemeal adjudication of water rights. 424 U.S. at 819, 96 S.Ct. at 1247.[2]

■ Defendants argue that *Colorado River* requires dismissal here because each of the alleged predicate offenses in JDM's RICO claim have been raised in the arbitration proceeding. The court disagrees. In *Colorado River* the Supreme Court cautioned that "[o]nly the clearest justifications will warrant dismissal." 424 U.S. at 419. At a minimum, those justifications require the same parties and the same claims to be raised in another proceeding. The situation here does not meet even this minimum threshold. First, a RICO violation consists of more than the commission of predicate offenses. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 495, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). While the operative facts of the alleged predicate offenses may be before the arbitrators, JDM's RICO claim itself is not. Second, in *Colorado River* the federal suit was dismissed because all claims could be resolved in the concurrent state proceeding. That is not true here. Because Ewing and Mathur are not parties to the arbitration agree-

ment, JDM's claims against them are not subject to arbitration. The other pending lawsuits also involve different claims and different parties and therefore do not support the application of *Colorado River.*

■ Third, the interest in avoiding two active lawsuits is insufficient by itself to deprive a litigant of access to federal court. *See, e.g., Evans Transp. Co. v. Scullin Steel Co.,* 693 F.2d 715, 717–18 (7th Cir. 1982). Moreover, unlike the situation in *Colorado River,* in which the McCarran Amendment expressed a strong federal policy against piecemeal adjudication, the relevant federal law here is the Arbitration Act, which *"requires* piecemeal resolution [of disputes] when necessary to give effect to an arbitration agreement." *Moses H. Cone,* 460 U.S. at 20, 103 S.Ct. at 939 (holding that a stay under *Colorado River* was inappropriate even where the same parties and the issue of arbitrability were at issue in a state court suit filed earlier) (emphasis in original). While a stay is necessary to meaningfully enforce the arbitration agreement between the parties, dismissal under *Colorado River* is unwarranted. *See Ohio River Co. v. Carrillo,* 754 F.2d 236, 238 (7th Cir.1985) ("As a general practice, federal courts should stay rather than dismiss actions when they decline to proceed on the merits because of the pendency of a related state court proceeding").

### III. Rule 11 Sanctions

Defendants' motion for sanctions under Rule 11 also is based on the argument that JDM should not have filed its RICO claim in federal court. Defendants contend that JDM initiated three concurrent proceedings based on the same factual allegations. JDM first filed a complaint in arbitration against Redstart on December 20, 1984. On May 2, 1985, JDM filed suit against the First National Bank of Chicago in Illinois state court, based on the Kaut transaction and the Insanova transaction. JDM filed

---

**2.** Although *Colorado River* allows a federal court to dismiss a suit that duplicates proceedings pending elsewhere under certain circumstances, there is no general rule against identical suits proceeding concurrently in state and federal court. *See McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910); *Microsoftware Computer Systems, Inc. v. Ontel Corp.,* 686 F.2d 531, 537 (7th Cir.1982).

this RICO claim as a cross-claim in the Utica Tool litigation on September 30, 1985. Defendants contend that sanctions are warranted because JDM allegedly filed a cross-claim for improper purposes, namely to gain leverage in the arbitration proceeding and to obtain additional discovery, and without reasonable investigation into the facts supporting personal jurisdiction over Ewing and Mathur in South Carolina.

█ Although JDM's litigation strategy certainly appears to be less than optimal in terms of convenience of the parties and of judicial efficiency, the court is not persuaded that sanctions are appropriate. First, there is substantial authority, including decisions by this court, holding that RICO claims are not arbitrable.[3] It is also unclear whether RICO claims can be brought in state court. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235-37 (7th Cir.1986). JDM cannot be faulted for bringing its RICO claim in federal court, where subject matter jurisdiction clearly exists, instead of bringing it in state court or attempting to have it arbitrated.

Furthermore, as this court has already observed, although JDM's RICO claim factually overlaps matters now before the arbitrators, it is a distinct legal claim. It is at least colorable and JDM is entitled to discovery on it. As the Seventh Circuit stated in rejecting a claim of bad faith in *Indianapolis Colts v. Mayor & City Council*, 775 F.2d 177, 182 (7th Cir.1985), "[t]he exercise of one's legal right to have a dispute resolved in federal court is not an abuse of the judicial process." The record before this court discloses some aggressive litigation tactics by both sides, but it does not disclose a frivolous lawsuit filed solely to obtain discovery in another matter. The district judge in South Carolina rejected

virtually the same argument when he ordered Ewing and Mathur to appear for depositions.

The court also rejects defendants' assertion that JDM failed to investigate the grounds for the exercise of personal jurisdiction over Ewing and Mathur in South Carolina as a basis for Rule 11 sanctions. The parties have not discussed the grounds for personal jurisdiction under South Carolina law in their briefs, but consent is presumably one possible ground. Given defendants' professed concern with the proliferation of actions involving this matter, it would not be unreasonable for Ewing and Mathur to consent to resolving the case against them, along with the rest of the Utica Tool litigation. Also personal jurisdiction over Redstart apparently existed based on Redstart's dealing with Utica Tool, and those dealings allegedly were conducted through Ewing and Mathur. That is at least a colorable ground for the exercise of personal jurisdiction over Ewing and Mathur on JDM's RICO claim, which is based in part on the transaction involving Utica Tool. Finally, the issue of personal jurisdiction in South Carolina is irrelevant now that this action is pending in Illinois, so the propriety of imposing Rule 11 sanctions on that basis is somewhat dubious.

## IV. Rule 37 Sanctions

JDM has moved for sanctions under Fed. R.Civ.P. 37 based on the failure of Ewing and Mathur to answer certain questions at their depositions. Defendants contend that their refusal to answer deposition questions was justified because JDM should not have filed this action. After JDM filed its cross-claim in South Carolina JDM noticed the depositions of Ewing and Mathur.

---

**3.** Although there is a split of authority on this issue, this court has ruled previously that RICO claims are not referable to arbitration. *American Concept, Ltd. v. Irsay*, No. 84 C 10026 (N.D. Ill. Oct. 4, 1985) [Available on WESTLAW, DCTU database]. *See, e.g., S.A. Mineracao Da Trinidade-Samitri v. Utah Int'l, Inc.*, 576 F.Supp. 566, 574-576 (S.D.N.Y.1983), *aff'd* 745 F.2d 190, 196 (2d Cir.1984). *But see Steinberg v. Illinois Co., Inc.* 635 F.Supp. 615, 619-20 (N.D.Ill.1986)

(collecting cases and holding that RICO claims are arbitrable). In *Rudell v. Comprehensive Accounting Corp.*, 802 F.2d 926, 931 n. 5 (7th Cir.1986), the Seventh Circuit expressly left the issue open. The Supreme Court recently granted *certiorari* in a Second Circuit case holding that RICO claims are not arbitrable. *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir.1986), *cert. granted*, — U.S. —, 107 S.Ct. 60, 93 L.Ed.2d 20 (Oct. 6, 1986).

Counsel for Mr. Mathur informed JDM that Mr. Mathur would not appear. No protective order was sought under Fed.R.Civ.P. 26(c), but Mr. Mathur in fact did not appear for his deposition as scheduled. JDM then brought a motion to compel Ewing and Mathur to appear and give testimony, and defendants filed a motion to quash the deposition notices. Upon hearing both motions the district court in South Carolina ruled that defendants' motion to quash was untimely. The judge granted JDM's motion to compel over defendants' objection that JDM should not be allowed to take depositions outside of the arbitration proceeding. The judge did not rule at that time on JDM's motion for sanctions under Fed.R. Civ.P. 37(d), although he strongly suggested that sanctions would be appropriate.

Ewing and Mathur subsequently appeared at the rescheduled depositions, but they refused to answer questions pertaining to JDM's cross-claim on more than eighty occasions. Instead of suspending the deposition so that a motion to limit or terminate it could be made under Fed.R. Civ.P. 30(d), counsel directed Ewing and Mathur not to answer certain questions throughout the deposition. Essentially, counsel objected that the questions were irrelevant and that the discovery was sought for an improper purpose. For example, at Mr. Ewing's deposition Mr. Ewing's counsel refused to allow him to answer questions, stating that:

> Well, if by this case, you are referring to Utica and the claims of Utica, I will allow him to answer.
>
> If you are talking about the cross-claim or the matters in arbitration or matters not involving the claim brought by Utica Tool Company and its related company, Triangle International, I will object on the grounds that it is irrelevant, that it is clearly designed to be

involved with the issues which are the subject of the pending arbitration proceedings, that it is abusive, vexatious and harrassing, an attempt to discovery brought for bad purpose and in bad faith, and I will direct the witness not to answer.

> To the extent that conversations that he may have had involved Utica and the claims that Utica has brought, he may answer the question.

Ewing Dep. at 50–51. That of course is yet another version of defendants' argument that JDM should not have brought its RICO claims in federal court, an argument that the South Carolina judge already rejected in granting JDM's motion to compel Ewing and Mathur to appear for the depositions.[4]

JDM contends the failure of Ewing and Mathur to answer questions at a court-ordered deposition constitutes a violation of the court order and warrants sanctions under Fed.R.Civ.P. 37(b)(2). *See Shapiro v. Freeman*, 38 F.R.D. 308, 310 (S.D.N.Y. 1965). The court agrees:

> The general rule in this district is that, absent a claim of privilege, it is improper for counsel at a deposition to instruct a client not to answer. If counsel objects to a question, he should state his objection for the record and then allow the question to be answered subject to his objection.

*See, e.g., Coates v. Johnson & Johnson*, 85 F.R.D. 731, 733 (N.D.Ill.1980); Fed.R.Civ.P. 30(c) ("Evidence objected to shall be taken subject to the objections."); *see also Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 902–04 (7th Cir.1981) (wholesale refusals to answer are improper but refusing to answer irrelevant questions that "unnecessarily touch sensitive areas or go beyond reasonable

---

4. The parties were unable to resolve their dispute during the deposition. Efforts to reach the district judge in South Carolina were unsuccessful (Ewing Dep. at 95). On the second day of Ewing's deposition JDM's counsel sought to continue questioning Ewing, but the parties had previously agreed that that time would be set aside for Utica Tool's counsel to answer questions (Ewing Dep. at 116–17). JDM's counsel then sought an order from Judge McGarr directing Ewing to answer his additional questions. Judge McGarr denied JDM's motion, holding that JDM had not made a sufficient showing to justify his intervention in the deposition and stating that it would be up to the district judge in South Carolina to resolve the matter (Ewing Dep., at 130–143).

limits" may be justified), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). If defendants' counsel objected to discovery the proper procedure was to file a motion for a protective order under Rule 26(c). For Ewing and Mathur to refuse to appear in the absence of such an order was improper in the first place. For them to refuse to answer questions pertaining to JDM's cross-claim in the face of a court order was highly improper, especially after the district judge in South Carolina already had rejected the arguments on which their objections were based.

JDM was entitled to discovery on its cross-claim, including the RICO count, notwithstanding the pendency of defendants' motion to dismiss or their objections to personal jurisdiction over Ewing and Mathur. The record now before this court does not show that JDM's depositions of Ewing and Mathur were conducted improperly or in bad faith. Even if the examination was being conducted improperly or in bad faith, it was up to the defendants to suspend the deposition and raise the issue on a motion to terminate or limit the examination under Fed.R.Civ.P. 30(d). Rule 37 requires sanctions to be imposed under these circumstances.

 This court has considerable flexibility in formulating sanctions under Rule 37(b)(2). Those sanctions include an order taking designated facts as established for the purposes of this action. Fed.R.Civ.P. 37(b)(2)(A). JDM asks that the facts alleged in paragraphs 3, 4, 6 and 7 of its cross-claim be taken as established. However, such an order would establish virtually all of the elements of JDM's RICO claim. That would be unduly harsh despite the egregious conduct of defendants' counsel. Instead, the court believes that it would be more appropriate to order defendants' counsel to pay JDM's reasonable expenses resulting from defendants' failure to give discovery in this case as provided by the Federal Rules of Civil Procedure and as required by the South Carolina district court. JDM should submit a request for such reasonable expenses.

## CONCLUSION

Defendants' motion to stay this action pending the conclusion of the arbitration proceedings is granted. Defendants' motion for sanctions is denied. JDM's motion for sanctions is granted.