James R. LaDUKE, Plaintiff–Appellant,

v.

**BURLINGTON NORTHERN RAILROAD COMPANY,**
**Defendant–Appellee.**

No. 88–3121.

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1989.

Decided July 20, 1989.

John B. McCarthy, Don C. Aldrich, Yaeger & Yaeger, Minneapolis, Minn., Frank

---

R. Christian, Chicago, Ill., for James R. LaDuke.

John Newell, Wysoglad & Associates, Chicago, Ill., for Burlington Northern R. Co.

Before POSNER, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

James R. LaDuke filed a negligence claim against the Burlington Northern Railroad Co. (Burlington Northern) under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, in the Circuit Court of Peoria County, Illinois on April 25, 1988. Burlington Northern filed a motion to dismiss or transfer the action on the ground of forum non conveniens. Then, on June 6, 1988, Mr. LaDuke filed this action raising the identical claim in the United States District Court for the Northern District of Illinois. The district court, relying on the "exceptional-circumstances test" enunciated by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), declined to exercise jurisdiction over Mr. LaDuke's federal claim and dismissed the action. We affirm the judgment of the district court with modification. The district court properly decided not to exercise jurisdiction over this action, but Mr. LaDuke's federal action should have been stayed rather than dismissed.

## I.

### Background

Mr. LaDuke is a resident of the city of Galesburg in Knox County, Illinois and is employed as a locomotive fireman/engineer for Burlington Northern. On May 6, 1985, Mr. LaDuke was working in Burlington Northern's facility at the Union Depot Station in Chicago.[1] He slipped in a pool of oil while repairing a locomotive and injured his back and shoulder. Burlington Northern's records show that Mr. LaDuke was treated for his injuries by two doctors in Galesburg. In addition, he underwent diagnostic radiology treatments at Galesburg Cottage Hospital and received physical therapy at Galesburg Orthopedic Services.[2]

Although Mr. LaDuke was treated for his injuries in Galesburg and the incident underlying his claim occurred in Chicago, Mr. LaDuke chose to file his first FELA claim in Illinois state court in Peoria. In response, Burlington Northern filed a motion to dismiss or transfer the action on the ground of forum non conveniens. The railroad asserted that Peoria had virtually no contact with the FELA claim and suggested Knox County (where Mr. LaDuke resides and most of his medical treatment was administered), Kane County (where Aurora is located), or Chicago as more appropriate alternative forums. R. 12, Ex. B at 2.

Burlington Northern's forum non conveniens motion was argued before Judge Courson of the Peoria County Circuit Court on June 16, 1988, three days after Mr. LaDuke had filed this second identical FELA claim in federal district court in Chicago. Judge Courson did not rule on Burlington Northern's motion on the ground that this action was pending in federal court. However, he explained orally that, if the district court declined to exercise its

1. The complaint that Mr. LaDuke filed in federal court states that his injury occurred while working "in and around defendant's yard facility at the Union Depot Station, Chicago, Illinois." R. 1 at 2. His state complaint, however, states that he was injured while working on a Burlington Northern locomotive "near Aurora, Illinois." R. 12, Ex. B at Ex. A p. 2. In response to Burlington Northern's motion to dismiss, Mr. LaDuke explained that the injury actually occurred in Chicago. R. 13 at 1. The locomotive that Mr. LaDuke was working on at the time of his injury apparently operates on a line of Burlington Northern track running between Chicago and Aurora. *See* R. 12, Ex. C at 1.

2. *See* R. 12, Ex. B. at 1–2. In addition, Mr. LaDuke was treated on the night of his injury at the Clearing Industrial Clinic in Chicago, and his principal physician in Galesburg referred him to the Mayo Clinic in Rochester, Minnesota. *Id.* Mr. LaDuke's counsel has also stated that Mr. LaDuke received treatment (a chymopapan injection and fusion surgery) in Champaign, Illinois. *See* R. 12, Ex. C. at 1 (Affidavit of John B. McCarthy).

jurisdiction, he would transfer the state case from Peoria County to the more appropriate forum of Knox County. *See* R. 12 at 2.

Burlington Northern then filed a motion in the district court seeking dismissal of the federal action due to the pendency of the identical action in state court and because the federal action was time barred under the applicable statute of limitations.[3] The district court noted that several factors weighed in favor of dismissing the action: 1) the state court action was filed before the federal action; 2) there was a real possibility of piecemeal litigation; 3) simultaneous litigation in state and federal court would inconvenience both parties; and 4) the state courts could protect adequately Mr. LaDuke's rights. *See LaDuke v. Burlington Northern Railroad Co.*, No. 88 C 5094, mem. op. at 3 (N.D. Ill. Sept. 30, 1988); R. 20 at 3 [hereinafter Mem. op.]. In an effort to reduce the impact of these factors, Mr. LaDuke's counsel represented to the district court that the state-court action would be dismissed as soon as the district court exercised jurisdiction over the claim and Burlington Northern answered the complaint.[4] In order for the district court to exercise jurisdiction over Mr. LaDuke's claim, however, it would have to determine whether Mr. LaDuke's federal action was time barred and whether venue was appropriate in the Northern District of Illinois. Because addressing these issues would only exacerbate the problem of piecemeal litigation and defeat the purposes of the *Colorado River* doctrine, the district court dismissed Mr. LaDuke's federal action. Mr. LaDuke's state-court action was then transferred from Peoria to the Knox County Circuit Court in Galesburg. *See* Appellant's Br. at 10.

## II.

### Analysis

#### A. Colorado River *Doctrine*

The "exceptional-circumstances test" established by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–21, 96 S.Ct. 1236, 1246–48, 47 L.Ed.2d 483 (1976), permits a district court to dismiss or stay an action when there is an ongoing parallel action in state court. As the Court explained in *Colorado River*, the principles underlying this doctrine "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). Because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," the mere fact that an action is pending in state court ordinarily is no bar to parallel federal proceedings. *Id.; see also Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1307 (7th Cir.1988) (surrender of jurisdiction not justified merely because a parallel state action exists); *Evans Transp. Co v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir.1982) (same). Thus, the surrender of jurisdiction in deference to parallel state proceedings for reasons of "wise judicial administration" is warranted only under "limited" and "exceptional" circumstances. *Id.* at 818. As we explained in *Lumen Construction, Inc. v. Brant Construction Co.*, 780 F.2d 691, 694 (7th Cir.1985), "a federal court cannot lightly abjure its responsibility to assert jurisdiction." Moreover, the Supreme Court has emphasized that "[o]nly the clearest of justifications" will allow a federal court to surrender jurisdiction because of parallel state-court litigation. *See Colorado River*, 424 U.S. at

---

**3.** 45 U.S.C. § 56 requires FELA actions to be commenced "within three years from the day the cause of action accrued." Mr. LaDuke's injury allegedly occurred on May 6, 1985, but his federal claim was not filed until June 13, 1988. Mr. LaDuke maintains that the statute of limitations was tolled on April 25, 1988 when he filed his state-court action.

**4.** *See* R. 13 at 2; Mem. op. at 4. During oral argument, Mr. LaDuke's counsel assured this court that Mr. LaDuke's state-court action would be dismissed if the district court decided the statute of limitations issue in his favor and exercised jurisdiction over his federal claim.

819, 96 S.Ct. at 1247; *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 25–26, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983). *See generally New Orleans Public Serv., Inc. v. Council of New Orleans*, —— U.S. ——, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989); *Deakins v. Monaghan*, 484 U.S. 193, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988); *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984).

Before the *Colorado River* doctrine can be applied, the district court must first determine whether the concurrent state and federal actions are actually parallel. *See Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir.1988); *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir.1988). Suits are " ' "parallel" when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.' " *Id.* at 1288 (quoting *Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir.1979)). There is no dispute that the actions involved in this case are clearly parallel under this standard, since the parties and the claims in the federal action are identical in all respects to those in the pending state action.[5] Thus, this prerequisite to the application of the *Colorado River* doctrine is satisfied in this case.

After determining that the state and federal actions are actually parallel, the district court must next consider a number of factors that might justify a decision to refrain from exercising jurisdiction over an action. As we explained in *Day*, and as the district court recognized in this case, there are at least ten factors that a district court can consider in deciding whether "exceptional circumstances" exist that would justify deference to the state courts under the *Colorado River* doctrine. *See Day*, 862 F.2d at 658; Mem. op. at 2; *see also Interstate Material Corp.*, 847 F.2d at 1288–89. In *Lumen*, 780 F.2d at 694–95, we set forth those ten factors: 1) whether the state has

assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

No single factor is necessarily determinative, *see Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246, and the weight given to any particular factor will vary greatly from case to case, depending on the particular factual setting of the case at hand. *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937. Moreover, in making its decision, the district court should consider any "special factors counselling for or against the exercise of jurisdiction" in the case before it. *Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.*, 600 F.2d 1228, 1234 (7th Cir.1979). In short, the district court's decision should not rest on a "mechanical checklist" of the relevant factors. *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937. Rather, the foregoing factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 940.

Before deciding not to exercise its jurisdiction over an action that is being concurrently litigated in state court, the district court must reach a "carefully considered judgment[,] taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise." *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1247. The decision whether to surrender jurisdiction over a federal action pending the resolution of a parallel state action is "necessarily left to the discretion of the district court in the first instance," *Moses H. Cone*, 460 U.S. at

---

5. "Indeed, the complaints in both actions are verbatim, the only material difference resulting from LaDuke's allegation here that the accident

occurred in Chicago rather than Aurora, Illinois, as pled in his first complaint." Mem. op. at 3 n. 1.

19, 103 S.Ct. at 938, and the district court's decision will only be reversed when that discretion has been abused. *See Day,* 862 F.2d at 655; *Interstate Material Corp.,* 847 F.2d at 1286. Although the decision whether to defer to the state courts is committed to the discretion of the district court, that decision is not unreviewable. *See Moses H. Cone,* 460 U.S. at 19, 103 S.Ct. at 938. The district court's discretion must be exercised under the "exceptional-circumstances test" prescribed by the Supreme Court. *Id.*

Because several of the relevant factors strongly support the district court's decision not to exercise jurisdiction over Mr. LaDuke's federal action, the court's decision to defer does not constitute an abuse of discretion. Certainly, the district court's concern about the danger of piecemeal litigation was well founded. " 'Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.' " *Day,* 862 F.2d at 659 (quoting *American Int'l Underwriters, (Phillipines), Inc. v. Continental Ins. Co.,* 843 F.2d 1253, 1258 (9th Cir.1988)). As the district court recognized, *see* mem. op. at 3, if Mr. LaDuke pursues both his federal and his state action, identical issues will be litigated simultaneously in two different forums, and, under the principles of issue preclusion, an earlier decision in one court may bind the parties in the other court. This circumstance gives rise to two problems. First, a party may try to accelerate or stall proceedings in one of the forums in order to ensure that the court most likely to rule in its favor will decide a particular issue first. Second, the possibility exists

that one court, unaware that the other court has already ruled, will resolve an issue differently and create a conflict between the two forums.[6] Thus, the results of simultaneous litigation of identical issues in the state and federal courts may be both "unseemly" and a "grand waste" of the efforts of the parties and the courts. *See Microsoftware Computer Sys. v. Ontel Corp.,* 686 F.2d 531, 538 (7th Cir.1982), *overruled on other grounds, Gulf Stream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (abolishing the *Enelow–Ettleson* doctrine). As we pointed out in *Lumen,*

> [w]hen a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.

*Lumen,* 780 F.2d at 694.

We cannot quarrel with the other factors relied upon by the district court. Simultaneous litigation in Chicago and either Peoria or Aurora would certainly inconvenience both parties. *See* mem. op. at 3. Moreover, even though Chicago has a more substantial relationship with Mr. LaDuke's FELA claim than does Peoria, the state court has already determined that the Knox County Circuit Court in Galesburg is a more appropriate forum for Mr. LaDuke's suit than Peoria County, Kane County, *or* Cook County.[7] Nor can there

---

6. In *Lumen,* we noted:

> While the doctrine of res judicata largely obviates the risk of conflicting final dispositions on the merits, a significant risk of conflict attends interlocutory rulings that are not ordinarily entitled to preclusive effect. *See* 1B *Moore's Federal Practice* ¶ 0.441[4] (1984). To take a fairly pedestrian example, the state and federal courts may issue contradictory orders on discovery matters. This single, simple conflict, on matters ordinarily within the trial courts' broad discretion, leads ineluctably to a "rush to judgment," with each side attempting to push forward the litigation in

the forum ruling in its favor on the preliminary matter. *See Microsoftware Computer Systems, Inc. v. Ontel Corp.,* 686 F.2d 531, 538 (7th Cir.1982). In the end, the forum that loses the race will have engaged in a "grand waste of efforts." *Id.*

780 F.2d at 694 n. 2.

7. In the motion to dismiss or transfer on the ground of forum non conveniens that Burlington Northern filed in state court, Knox County, Kane County, *and* Chicago were suggested as appropriate alternative forums. *See* R. 12, Ex. B. at 2. After the district court dismissed Mr. LaDuke's federal action, the state trial court

be any serious contention that the state courts are not capable of protecting Mr. LaDuke's rights. As the district court noted, Congress expressly provided that the state courts have concurrent jurisdiction over FELA actions.[8] Perhaps more importantly, defendants are not allowed to defeat a FELA plaintiff's choice of a state forum by removing the action to federal court.[9] It is unlikely that Congress would have made the state courts such an important part of the FELA scheme if it feared that those courts would inadequately protect plaintiffs' rights.

Under the circumstances here, it is also not inconsequential that the state court obtained jurisdiction over Mr. LaDuke's initial FELA claim seven weeks before the federal action was filed. The state action apparently did not make a great deal of progress prior to the filing of the federal action (indeed, at the time that the briefs in this case were prepared, Burlington Northern had not filed an answer in either action, *see* Appellant's Br. at 10). However, it is important to note in considering this factor in this case that Mr. LaDuke filed both the state action and the federal action. It was his choice to file in state court first. It was also his choice not to dismiss the state action after he commenced the federal action.

This factor must also bear on our assessment of Mr. LaDuke's assertion that there is one right that the state court cannot adequately preserve—his right to pursue his FELA remedy in a federal forum if he so chooses. *See* Appellant's Br. at 8–9. It must be remembered that Mr. LaDuke exercised his statutory right to choose a forum and chose to bring his suit in Illinois state court. Mr. LaDuke's desire for a federal forum could easily have been satisfied by filing his action in federal court in the first instance. *See Microsoftware Computer Sys.*, 686 F.2d at 537 ("[A]ny

interest MCS had in a federal forum could have been satisfied by removing the one action instead of creating a second."); *see also Day*, 862 F.2d at 660 ("Part of the rationale behind our decision in *Microsoftware* to uphold the *Colorado River* stay was that the federal plaintiff, MCS, had passed up an opportunity to be heard in federal court.").

Because the relevant *Colorado River* factors strongly support the district court's decision not to exercise jurisdiction over Mr. LaDuke's federal action, we conclude that the court's decision to defer to the state litigation was not an abuse of discretion.

## B. *Propriety of Dismissal*

■ Having concluded that the district court properly deferred to the state court under *Colorado River*'s "exceptional-circumstances test," we must now determine whether it was proper for the district court to dismiss the federal action rather than to enter a stay. The district court concluded that dismissal was appropriate here since there was no possibility that such an action would prejudice Mr. LaDuke's rights. *See* mem. op. at 4 n. 2. Mr. LaDuke's federal action was filed more than three years after his injury occurred. He maintains that the three-year statute of limitations period was tolled by his filing of the state-court action. Thus, reasoned the district court, the risk that Mr. LaDuke would be time barred from reinstating his federal action if the state action does not reach a final decision on the merits is no greater now than it would be if the state court dismissed his action at some time in the future. *See id.* Therefore, the district court concluded that a dismissal was more appropriate than a stay in this case.

We have held that a stay, not a dismissal, is the proper procedural mechanism for a

transferred his action from Peoria to the Knox County Circuit Court in Galesburg. *See* Appellant's Br. at 10.

8. 45 U.S.C. § 56 provides that "[t]he jurisdiction of the courts of the United States under this chapter shall be concurring with that of the courts of the several States."

9. 28 U.S.C. § 1445(a) provides that "[a] civil action in any State court against a railroad or its receivers or trustees, arising under sections 51–60 of Title 45, may not be removed to any district court of the United States."

district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine. *See Rosser,* 864 F.2d at 1308; *Lumen,* 780 F.2d at 697–98; *Board of Educ. v. Bosworth,* 713 F.2d 1316, 1322 (7th Cir.1983); *Evans Transp. Co.,* 693 F.2d at 717–18. A stay, in contrast to a dismissal, allows the federal court to retain jurisdiction over the federal action in case the state litigation "washes out" for some reason and fails to reach its anticipated end of a final decision on the merits. *See Rosser,* 864 F.2d at 1308–09 (discussing *Lumen* ); *Evans Transp. Co.,* 693 F.2d at 717–18. While, as the district court pointed out, the statute of limitations, often a prime consideration, *see Bosworth,* 713 F.2d at 1322, appears to be less of a concern than usual, we do not believe that this consideration necessarily determines the matter. Other considerations also suggest that a stay is preferable. For instance, a stay has the advantage of bringing the federal action back before the same federal judge that had previously considered the case should a determination of the preclusive effect of state-court decisions be necessary. It protects the rights of all the parties [10] without imposing any additional costs or burdens on the district court. *See Ingersoll Milling Mach. Co. v. Granger,* 833 F.2d 680, 686 (7th Cir.1987) ("This approach [staying rather than dismissing the federal action] protects the substantial rights of the parties while permitting the district court to manage its time effectively."). Therefore, we reaffirm the principle that a stay is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding, and conclude that the district court erred by dismissing the federal action rather than entering a stay.

## Conclusion

The district court did not abuse its discretion in deciding not to exercise its jurisdiction over this action. A stay, however, rather than a dismissal, is the appropriate procedural mechanism to be used when de-

ferring to parallel state proceedings under the *Colorado River* doctrine. We therefore direct the district court to convert its order of dismissal into a stay, and affirm the judgment of the district court as modified. The appellant shall bear the costs of this appeal.

IT IS SO ORDERED.

---

**10.** While Burlington Northern is, of course, free to request that the district court dismiss the action on the basis of statute of limitations, we are aware of no reason that would compel such action on its part. Of course, we express no view on the merits of such a motion.