**HOME FEDERAL BANK FOR SAVINGS, Plaintiff,**

v.

**Paul GUSSIN, et al., Defendants.**

**Paul GUSSIN, Third Party Plaintiff,**

v.

**CALUMET NATIONAL BANK, as Executor of Estate of Donald G. Levine, Third Party Defendant.**

No. 90 C 5077.

United States District Court, N.D. Illinois, E.D.

Jan. 9, 1992.

Marc J. Chalfen, Randolph E. Ruff, James H. Longstreet, DeHaan & Richter, P.C., Chicago, Ill., for Home Federal Bank for Savings.

F. John McGinnis, Althermer & Gray, Chicago, Ill., for Paul Gussin.

Myrna Baskin Goldberg, Rudnick & Wolfe, Chicago, Ill., for Calumet Nat. Bank.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Calumet National Bank (Calumet), a third party defendant in this action, moves to dismiss Paul Gussin's (Gussin) third party complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, Calumet requests that we exercise our discretion and decline jurisdiction. For the following reasons, Gussin's third party complaint is stayed and Calumet's motion to dismiss continued.

## BACKGROUND

Donald Levine, a resident of Munster, Indiana, died on November 9, 1989. His estate was opened for probate on November 21, 1989, in the Lake County Superior Court of Indiana, Probate Division, with Calumet being named executor. On April 27, 1990, Gussin filed a complaint in Probate Court against the estate, on behalf of himself and the 139–41 North Wabash Ltd. Partnership (Partnership). Gussin and Levine were the sole members of the partnership. This claim arose out of a promissory note and guaranty agreement in the amount of $2,500,000, executed by the partnership in favor of Home Federal Bank For Savings (Home Federal), the plaintiff in this litigation, for the financing of partnership assets. Gussin seeks indemnification

from the estate, pursuant to the partnership agreement, in the event of a default on the promissory note and guaranty agreement.

Meanwhile, Home Federal commenced these federal proceedings against Gussin, *et al.*, on the partnership indebtedness, thereby prompting Gussin to file his third party indemnification claim (which is identical to his probate complaint) against the estate. It is this claim that led to Calumet's motion to dismiss.

## DISCUSSION

Calumet contends that Gussin's third party action represents an *in rem* proceeding in which the Indiana Probate Court, by virtue of Gussin's state claim, has prior exclusive jurisdiction. In support of its position Calumet cites Section 29-1-7-2 of the Indiana Probate Code, which provides:

> The probate of a will and the administration of the estate shall be considered one proceeding for the purposes of jurisdiction, and said entire proceeding and the administration of a decedent's estate is a proceeding in rem.

This provision has been interpreted to mean that collateral proceedings such as will contests, creditors' claims and actions to possess real estate are also part of the original *in rem* action and may be tried by the probate court. *See Krick v. Farmers & Merchants Bank of Boswell,* 151 Ind. App. 7, 279 N.E.2d 254, 258–59 (1972). Calumet extrapolates that because the Indiana court characterizes Gussin's state claim as *in rem* his federal claim must likewise be labelled *in rem,* thus invoking the well-settled principle that "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Penn General*

*Cas. Co. v. Pennsylvania,* 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935).

While the doctrine of prior exclusive jurisdiction is alive and well, it is not appropriate in this case. This is because, in the true sense, Gussin's claim for indemnification is not *in rem* where control over Levine's estate is needed to give effect to jurisdiction. *Princess Lida of Thurn & Taxis v. Thompson,* 305 U.S. 456, 466, 59 S.Ct. 275, 280–81, 83 L.Ed. 285 (1939).[1] Instead, Gussin, as a third party creditor, merely seeks to have his rights in the estate adjudicated. This rule was expressed as follows:

> [A] federal court has no jurisdiction to probate a will or administer an estate.... But ... federal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate....

*Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946) (citations omitted) (quoting *Waterman v. Canal-Louisiana Bank Co.,* 215 U.S. 33, 43, 30 S.Ct. 10, 12, 54 L.Ed. 80 (1909)). This rule operates "notwithstanding the statutes of the State[s] [that] undertake to give to state probate courts exclusive jurisdiction over all matters concerning the settlement of accounts of executors and administrators in the distribution of estates." *Waterman,* 215 U.S. at 44, 30 S.Ct. at 12.

Thus, having found the doctrine of prior exclusive jurisdiction to be inapplicable, the question now becomes whether our exercise of jurisdiction over Gussin's claim "interfere[s] with the probate proceedings or assume[s] general jurisdiction of the probate...." We hold that it does. In

---

**1.** The cases cited by Calumet for the proposition that prior exclusive jurisdiction is appropriate in this case are either of a purely probate nature, which Congress intended to be in the exclusive jurisdiction of the state court, *Rice v. Rice Foundation,* 610 F.2d 471, 475 (7th Cir. 1979), or of the classic *in rem* variety, such as suits to administer trusts, liquidate businesses, marshall assets, *et cetera. See Penn, supra* (suit to liquidate insurance company); *Blackhawk Heating & Plumbing Co. v. Geeslin,* 530 F.2d 154 (7th Cir.1976) (suit to liquidate insurance company); *Conrad v. Gartley,* 238 F.2d 464 (7th Cir.1956) (action to quiet title); *Cenker v. Cenker,* 660 F.Supp. 793 (E.D.Mich.1987) (action by beneficiary to recover specific insurance proceeds from decedent's estate).

*Rice, supra,* the court considered what type of federal jurisdiction, of a matter not purely probate in nature, would constitute an "interference" with a state proceeding already in progress. *Rice* acknowledged that the courts of appeals were split into two camps on the issue. The first approach, enunciated by the Fifth Circuit, looks to the nature of the plaintiff's claim. If the claim is contingent on the federal court ruling that the decedent's will is invalid, the interference is too direct and jurisdiction will not lie. If, on the other hand, plaintiff does not attack the validity of the will but merely seeks to share in the estate's distribution, no significant interference is involved and federal jurisdiction is permissible. *See Rice,* 610 F.2d at 476 (citing *Akin v. Louisiana National Bk. of Baton Rouge,* 322 F.2d 749, 753–54 (5th Cir.1963)).

A second and more popular approach examines the route the plaintiff's claim would take in the state system. As set forth by the Second Circuit:

> The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court. If so, the parties will be relegated to that court; but where the suit merely seeks to force a claim *inter partes,* enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed.

*See Rice,* 610 F.2d at 476 (citing *Lamberg v. Callahan,* 455 F.2d 1213, 1216 (2d Cir. 1972)).

The *Rice* court did not expressly adopt either approach but left to the district court the approach to apply. The court did state that "[t]he approaches outlined above are not hard and fast rules; rather, they were formulated to aid in the resolution of the difficult jurisdictional issue presented when probate-like actions are filed in federal court." *Rice,* 610 F.2d at 476.

■ For reasons discussed below, we believe the latter approach laid down in *Lamberg* offers the preferred method of analysis. Therefore, we are again led to review Gussin's state claim under Indiana law.

As already noted, the Indiana courts consider proceedings collateral to the administration of a decedent's estate to be part of the original *in rem* action, even though separate docket numbers may be assigned. As a result, Gussin's state claim is part of the original state proceeding for purposes of jurisdiction. Gussin was relegated to filing his suit with the probate court, as opposed to a state court of general jurisdiction.

After applying *Lamberg,* we are advised not to exercise jurisdiction. As cautioned by *Rice,* this is not a mechanical analysis made up of "hard and fast rules." Nevertheless, the result is in the best interest of judicial economy and also necessary to avoid inconsistent judgments, especially in view of the rulings that have already been made by the Probate Court, as noted in Calumet's briefs.

■ For many of the same reasons, we would reach the same result by applying the "exceptional circumstances test" enunciated by the Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In *Colorado River* the Court recognized certain considerations that justify a district court's dismissal or stay of an action, when there is a concurrent parallel action in state court. These considerations include concern for "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). However, we are mindful that this discretion must be exercised with caution because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. *See also LaDuke v. Burlington Northern R. Co.,* 879 F.2d 1556, 1558 (7th Cir.1989) ("the surrender of jurisdiction in deference to parallel state proceedings ... is warranted only under 'limited' and 'exceptional' circumstances.").

■ As a threshold matter, in order for the *Colorado River* doctrine to be applied the concurrent federal and state action must in fact be parallel. *See LaDuke,* 879 F.2d at 1559; *Day v. Union Mines, Inc.,* 862 F.2d 652, 655 (7th Cir.1988). "Suits are 'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *LaDuke,* 879 F.2d at 1559 (quoting *Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1288 (7th Cir.1988)).

Contrary to Gussin's assertions, the federal and state actions we are considering are indeed parallel. In fact, they are identical in every respect, including the same parties, issues and wording.[2] Next, we must examine several factors that will aid us in deciding whether to refrain from exercising jurisdiction. These factors were set forth in *Lumen Constr., Inc. v. Brant Constr. Co.,* 780 F.2d 691, 694–95 (7th Cir. 1985):

(1) whether the state has assumed jurisdiction over property;

(2) the inconvenience of the federal forum;

(3) the desirability of avoiding piecemeal litigation;

(4) the order in which jurisdiction was obtained by the concurrent forums;

(5) the source of governing law, state or federal;

(6) the adequacy of state court action to protect the federal plaintiff's rights;

(7) the relative progress of state and federal proceedings;

(8) the presence or absence of concurrent jurisdiction;

(9) the availability of removal; and

(10) the vexatious or contrived nature of the federal claim.

We are also reminded that "[n]o single factor is necessarily determinative ... the weight given to any particular factor will vary greatly from case to case, depending on the particular factual setting of the case at hand." *LaDuke,* 879 F.2d at 1559 (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983)). We are not to treat these factors as a "mechanical checklist" but rather in a "pragmatic, flexible manner, with a view to the realities of the case at hand." *Moses H. Cone,* 460 U.S. at 16, 21, 103 S.Ct. at 937, 939.

The most prominent of the ten factors in the present case is the desirability of avoiding piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *LaDuke* 879 F.2d at 1560 (quoting *Day,* 862 F.2d at 659). This factor goes to the heart of the idea of wise judicial administration. As the *Lumen* court described:

When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.

*Lumen,* 780 F.2d at 694.

Also, as noted in *Lumen* and *LaDuke,* there are other likely ill-effects of parallel federal and state proceedings. A party may accelerate or delay one of the forum

---

**2.** Gussin points to our decision in *J.D. Marshall Int'l, Inc. v. Redstart, Inc.,* 656 F.Supp. 830 (N.D.Ill.1987), for the proposition that his federal and state claims are not parallel. *J.D. Marshall* is inapposite. There, we held that a dismissal under *Colorado River* was inappropriate where the defendants in the federal RICO action were not the same as in the pending arbitration. Moreover, even though the arbitration involved the same operative facts as the predicate RICO offense, the two claims were not the same and thus not parallel. *Id.* at 835. In any event, the

RICO claim was stayed. Gussin also makes the specious argument that, "abstention in this action will allow Calumet to relitigate the issue of Gussin's liability to Home Federal in the state, after a verdict for Home Federal in this court ..." (def. resp. at 8). It appears to this court that the issue of indemnification is separate and apart from the underlying obligation of Gussin and the estate to Home Federal. Therefore, we need not forecast the position of the parties in the event Home Federal prevails in its federal suit against Gussin.

rulings in order to gain a tactical advantage, or one court may enter an interlocutory order that conflicts with that of the other forum. These possibilities strongly counsel against our exercise of jurisdiction.

The Indiana probate court has jurisdiction over the estate from which any judgment in favor of Gussin will be satisfied. This is not tantamount to labeling Gussin's federal claim against Calumet as *in rem*, but we think it does suggest that the Indiana court, as the overseer of the estate's administration, is the more appropriate forum.

We also have no problem finding that it is unnecessarily inconvenient for Calumet to defend the same lawsuit in Chicago, Illinois and also in East Chicago, Indiana. This point is further supported by the next factor, *i.e.*, the order in which jurisdiction was obtained. Gussin chose the Indiana forum first, when he filed numerous claims against Calumet. For Gussin to file, eleven months later, a duplicative claim against Calumet in federal court, unfairly burdens Calumet. *See LaDuke*, 879 F.2d at 1561.

Next, in considering the source of governing law, it appears that the promissory note and guaranty agreement would be controlled by Illinois law. This does not greatly impact the analysis either way, mainly because no federal law is applicable. The Indiana courts are undoubtedly up to the task of properly applying Illinois law. This also goes to the next factor: the state court forum is adequate to protect Gussin's rights. There is no peculiar federal interest being served by litigating in federal court, as evidenced by this being a case of diversity jurisdiction. Similar to the facts in *LaDuke*, Gussin exercised his right to choose a state forum initially. His "desire for a federal forum could easily have been satisfied by filing his action in federal court in the first instance." *LaDuke*, 879 F.2d at 1561. *See also Microsoftware Computer Systems, Inc. v. Ontel Corp.*, 686 F.2d 531, 537 (7th Cir.1982).

Finally, in the last relevant factor to our analysis, we must look at the relative progress of the state and federal proceedings. The state court has entered an order of judgment and default on a counterclaim filed by Calumet against Gussin for an accounting and for indemnification. Sanctions were imposed by the state court against Gussin for non-compliance with the order, along with Calumet being awarded attorney fees and costs. Also, the court appointed a receiver for the partnership. On the federal side, there has been no progress whatsoever. It is clear that if we proceed with jurisdiction, potentially conflicting rulings could occur. It is not difficult to imagine Gussin pursuing a course in federal court, through the use of discovery, that would negate the adverse effect of the state court rulings. This type of potential abuse makes this a classic case for deference to the state court.

■ Having decided that a federal forum for Gussin's third party claim is unwise, we must lastly determine the propriety of the dismissal. In short, "a stay, not a dismissal, is the proper mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine." *LaDuke*, 879 F.2d at 1561–62. *See also Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1308–09 (7th Cir. 1988). As noted in *LaDuke*, a stay allows the same federal judge to retain jurisdiction of the action if, for some reason, the state litigation "washes out." It also "protects the rights of all the parties without imposing any additional costs or burdens on the district court." *Id.* 879 F.2d at 1562. *See also Ingersoll Milling Machine Co. v. Granger*, 833 F.2d 680, 686 (7th Cir.1987).[3]

## CONCLUSION

For the foregoing reasons, Gussin's third party claim against Calumet is stayed and Calumet's motion to dismiss is continued.

---

**3.** Likewise, we stay the issue of dismissal based on the statute of limitations as briefed by the parties.