**TEAMSTERS LOCAL NOS. 175 & 505 PENSION TRUST FUND, On Behalf of Itself and All Others Similarly Situated, Plaintiff,**

v.

**IBP, INCORPORATED; Richard L. Bond; John S. Chalsty; Wendy L. Gramm; John J. Jacobson, Jr.; Eugene D. Leman; Martin A. Massengale; Robert L. Peterson; Michael L. Sanem; Joann R. Smith; Donaldson, Lufkin & Jenrette, Inc.; Archer Daniels Midland Co., and Booth Creek Partners Limited III, LLLP, Defendants.**

No. CIV. 00–4211.

United States District Court,
D. South Dakota,
Southern Division.

Dec. 7, 2000.

Timothy J. Dougherty, Dougherty & Dougherty, Sioux Falls, SD, William S. Lerach, Darren Robbins, Randall H. Steinmeyer, Randall J. Baron, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, San Diego, CA, Robert J. Dyer, III, Dyer & Shuman, Denver, CO, Marc R. Stanley, Stanley, Mandel & Iola, Dallas, TX, Paul J. Geller, Cauley & Geller, Boca Raton, FL, for Plaintiff.

William G. Taylor, Woods, Fuller, Shultz & Smith, Sioux Falls, SD, Eric M. Roth, Wachtell, Lipton, Rosen & Katz, New York City, for Defendant IBP, Inc. Wendy L. Gramm John J. Jacobson, Jr. Martin A. Massengale Michael L. Sanem JoAnn R. Smith.

Michael L. Luce, Melissa C. Hinton, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD, James H.R. Windels, John J. Clarke, Jr., Davis Polk & Wardwell, New York City, for Defendant Richard L. Bond John S. Chalsty Eugene D. Leman Robert L. Peterson Donaldson, Lufkin & Jenrette, Inc.

William F. Day, Jr., Jon C. Sogn, Lynn, Jackson, Shultz & Lebrun, PC, Sioux Falls, SD, for Defendant Archer Daniels Midland Co. Booth Creek Partners Ltd. III, LLLP.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

In this proposed class action, Plaintiff, a Teamsters pension fund which owns stock in defendant Iowa Beef Packers, Inc. ("IBP"), seeks to enjoin IBP and the other defendants from going forward with a proposed merger of IBP and an affiliate of defendant Donaldson, Lufkin & Jenrette ("DLJ"). Plaintiff has filed a Motion for a Temporary Retraining Order ("TRO") and a Motion for Expedited Discovery. Defendants oppose Plaintiff's motions, and have filed their own Motion to Dismiss or Stay these proceedings. For the reasons stated below, Defendants' Motion to Stay is granted, and Plaintiff's Motion for a TRO and Motion for Expedited Discovery are denied as moot.

## BACKGROUND

Defendant IBP is a publically held Delaware corporation with its principal place of business in Dakota Dunes, South Dakota. The proposed private acquisition of IBP would take place by merging it into Rawhide Acquisition Corp., an entity which is affiliated with defendant, Donaldson, Lufkin & Jenrette, an investment banking

firm.[1] If the merger goes through, some members of IBP's board of directors—defendants Robert Peterson, Richard Bond, John Chalsty and Eugene Leman—will own shares in the new company. So will two other current shareholders in IBP—defendants Archer Daniels Midland Co. ("ADM") and Booth Creek Limited Partnership ("Booth Creek"). IBP's board of directors has entered into a merger agreement reflecting these arrangements,[2] which is now subject to a vote of IBP's shareholders.

In its Complaint, Plaintiff challenges the proposed acquisition of IBP by the DLJ buyout group. Plaintiff alleges that the directors of IBP breached their fiduciary duties to the corporation by failing adequately to determine the market price of IBP before agreeing to sell the company to the DLJ buyout group. According to Plaintiff, the proposed buyout will reward certain defendants, such as Peterson and ADM, with substantial equity interests in the new company in exchange for little or no financial consideration. Plaintiff also alleges that the merger agreement tilts the playing field in favor of the DLJ buyout group, and against other buyers who would otherwise be willing to pay more for IBP than the $22.25 per share provided in the merger agreement. Recently, two additional potential buyers have made bids for IBP, at the nominal prices of $25 and $26 per share.

Before this lawsuit was filed, different plaintiffs filed fourteen similar lawsuits in Delaware. Each of the Delaware actions has been brought on behalf of the stockholders of IBP, and each seeks to certify a class of the holders of IBP's common stock. All of the Delaware lawsuits name IBP, the individual members of its board of directors, and DLJ. None of the Delaware lawsuits name Booth Creek, but several name ADM. Each of the Delaware actions seeks an injunction prohibiting the proposed acquisition of IBP by the DLJ buyout group.[3]

Some progress has been made in the Delaware actions. The Court of Chancery there has already conducted two hearings, has consolidated all fourteen actions, has heard arguments on who should be lead counsel in the litigation. (At oral argument, counsel for IBP represented that a team of three lawyers, each representing a different named plaintiff, has been selected as lead counsel for the Delaware plaintiffs.) The parties have also begun a process of expedited discovery, in which Defendants have produced some documents to the Delaware plaintiffs, and are negotiating the terms of a confidentiality agreement for more document production.

In its Motion for a TRO in this Court, Plaintiff challenges two particular provisions of the merger agreement: (1) a $59 million termination fee which IBP must pay to some members of the DLJ buyout group if it fails to consummate the merger; and (2) a no shop provision which prevents IBP from seeking out higher bids from another buyer. Plaintiff seeks expedited discovery to support its claims. Defendant contends that both of the challenged provisions of the merger agreement are lawful. It also argues that the Court should dismiss or stay these proceedings in favor of the lawsuits now being prosecuted in Delaware.

## DISCUSSION

■ Before ruling on Plaintiff's motions, the Court must decide whether to

---

**1.** According to Defendants, DLJ has had an investment banking relationship with IBP for a number of years. DLJ Merchant Banking Partners III, L.P. ("DLJMBP") is an private equity fund affiliated with DLJ. Rawhide Holdings Corp. ("Rawhide Holdings") is a wholly owned subsidiary of DLJMBP. Rawhide Acquisition Corp., in turn, is a wholly owned subsidiary of Rawhide Holdings.

**2.** Defendants Peterson, Bond, Chalsty and Leman abstained from this vote.

**3.** Of the fourteen Delaware complaints, the earliest was filed on October 2, 2000, and the most recent was filed on November 1. Plaintiff's Complaint in this Court was filed on November 8.

exercise its jurisdiction. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). In general, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910)). Nevertheless, a district court may stay its hand in certain exceptional circumstances, when it is motivated by considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.,* 424 U.S. at 817, 96 S.Ct. at 1246 (citations omitted). The task is not to find some substantial reason to exercise federal jurisdiction, but to ascertain whether there exist exceptional circumstances to justify the surrender of that jurisdiction. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Co.,* 460 U.S. 1, 26–27, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983).

### A. Parallel State–Court Proceedings

■ For a federal district court to abstain under *Colorado River,* the proceedings in state and federal court must be parallel. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *LaDuke v. Burlington Northern R.R. Co.,* 879 F.2d 1556, 1559 (7th Cir.1989) (citation and internal quotation marks omitted). This lawsuit is parallel to the lawsuits which have been filed in Delaware. All of the lawsuits concern substantially the same issues—whether the merger agreement involves a breach of the fiduciary duties which IBP's directors owe to its shareholders. Judging from Plaintiff's allegations, Plaintiff is a member of the classes proposed in the Delaware proceedings, and its interests are the same as the other plaintiffs in those putative classes. It does not matter that Plaintiff is not a named plaintiff in

Delaware and that no class has yet been certified. *See Romine v. Compuserve Corp.,* 160 F.3d 337, 340 (6th Cir.1998). Similarly, the fact that one additional defendant—Booth Creek—has been named in this action does mean that the actions are not substantially similar. *See id.* "If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties." *Lumen Const., Inc. v. Brant Const. Co.,* 780 F.2d 691, 695 (7th Cir. 1985).

### B. Colorado River Factors

■ Abstention under *Colorado River* involves the balancing of several factors: (1) whether there is property over which one court has established jurisdiction; (2) whether the federal forum is inconvenient; (3) whether maintaining separate actions may result in piecemeal litigation; (4) whether one case has priority, especially in terms of relative progress; (5) whether state or federal law controls; and (6) whether the state forum is adequate to protect the federal plaintiff's rights. *Windsong Enterprises, Inc. v. Eden Isle Corp.,* 210 F.3d 380, 2000 WL 426594 at * 1 (8th Cir. April 19, 2000) (unpublished opinion); *U.S.Fidelity &and Guar. Co. v. Murphy Oil USA, Inc.,* 21 F.3d 259, 263 (8th Cir.1994) (reciting the same factors). These factors are not to be applied as a "mechanical checklist"; rather, they must be carefully balanced as they apply in each particular case, with the balance heavily weighted in favor of the exercise of jurisdiction. *See Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937.

■ Two of the *Colorado River* factors do not weigh in favor of abstention. First, this lawsuit does not involve property over which the state court has established jurisdiction. *See Romine,* 160 F.3d at 341. Second, for most of the parties, the federal forum here in South Dakota is not any less convenient than the state forum in Delaware. For IBP and a few of its directors,

who reside in South Dakota, the federal forum is actually more convenient.

The priority of the cases weighs only marginally in favor of abstention. Priority "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 940. The complaints in Delaware were filed a short time before the Complaint in this case. As Plaintiff points out, however, the Delaware chancery court has had to spend most of its time refereeing disputes between the various plaintiff's lawyers. As a result, not much of substance has been accomplished in the Delaware cases, with the exception of a small amount of preliminary discovery. Standing on its own, this factor cannot support abstention.

The remaining factors—the avoidance of piecemeal litigation, whether state or federal law controls, and the adequacy of the state forum—are closely related in this case. In *Allison v. Security Benefit Life Ins. Co.,* 980 F.2d 1213 (8th Cir.1992), the Eighth Circuit held that a district court did not err in dismissing a diversity suit, where the federal-court plaintiffs were all members of a certified class in a state court action in which their claims could be litigated. *Allison,* 980 F.2d at 1216. Similarly, in *De Cisneros v. Younger,* 871 F.2d 305 (2d Cir.1989), the Second Circuit said that "although the absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where the bulk of the litigation would necessarily revolve around the state-law rights of numerous parties." *De Cisneros,* 871 F.2d at 309 (citation, internal quotation marks and alterations omitted). Similar considerations in this case reveal exceptional circumstances supporting the need to abstain.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *LaDuke,* 879 F.2d at 1560. Adjudicating Plaintiff's lawsuit would require the Court to consider the same legal issues which are being litigated in Delaware, and present the chance that this Court would resolve those issues differently than the courts of Delaware.[4] The possibility that duplicate lawsuits will result in conflicting results is an especially important concern, because such results endanger both the "legitimacy of the court system in the eyes of the public" and "fairness to individual litigants." *See Lumen Const., Inc.,* 780 F.2d at 694.

In this case, the risks associated with conflicting adjudications are particularly high. Recently, two new bidders offered to buy IBP for nominally higher prices than DLJ. It is important that the issues raised in this action and in Delaware be resolved quickly, clearly, and uniformly, so that the sale of IBP can move forward expeditiously and in accordance with law. This is important, not just to Defendants, but also to the shareholders who are members of Plaintiff's proposed class and the classes proposed in Delaware. If the courts cannot reach a definite and speedy conclusion as to what rules must be followed in the sale of IBP, both Defendants and the shareholders of IBP will suffer.

■ Such a ruling must be delivered in accordance with Delaware law. In a diversity case, such as this, a district court must apply the choice of law rules of the state in which it sits. *See Whirlpool Corp. v. Ritter,* 929 F.2d 1318, 1320 (8th Cir.1991). The Supreme Court of South Dakota uses the Restatement (Second) of Conflict of Laws to resolve disputes over choice of law. *See Stockmen's Livestock Exchange v. Thompson,* 520 N.W.2d 255, 257 (S.D.

---

**4.** While Plaintiff can participate in the Delaware litigation, it does not appear that all of the Delaware plaintiffs could bring their claims in this Court. Even if Plaintiff filed a motion for class certification, at least some of the Delaware plaintiffs would not be able to join the class in this Court, because they would not own enough shares of stock to satisfy the jurisdictional minimum of $75,000 under 28 U.S.C. § 1332. *See Trimble v. Asarco, Inc.,* 232 F.3d 946, 959–60 (8th Cir. 2000).

1994). The Restatement, in turn, embodies a presumption called the "internal affairs" doctrine.

The internal affairs doctrine, which is found in sections 302 and 309 of the Restatement, recognizes that "only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 2642, 73 L.Ed.2d 269 (1982). When IBP incorporated in Delaware, it presumably did so "to take advantage of that state's corporation law, and its judicial expertise concerning corporate governance." *See Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 948 (7th Cir.1994); *see also* Restatement (Second) of Conflict of Laws, § 302, comment e. Because the issues raised in this lawsuit concern the internal affairs of IBP, a Delaware corporation, those issues must be settled under Delaware law.

The Supreme Court has acknowledged that the presence of state-law issues may sometimes weigh in favor of abstention. *See Moses H. Cone*, 460 U.S. at 26, 103 S.Ct. at 942. Federal circuit courts have recognized a number of circumstances in which such issues help support a decision to abstain. *See Allison*, 980 F.2d at 1216; *De Cisneros*, 871 F.2d at 309. Not only does Delaware law apply to this case, but the Delaware chancery court, through its daily interpretation of that law, has earned a reputation for its "expertise concerning corporate governance." *See Curtis 1000, Inc., supra.* There is no question that Delaware is an adequate forum for resolving the issues raised in this lawsuit. In this case, the presence of state-law issues and the availability of Delaware as an adequate forum weigh in favor of abstention.

Taken in the aggregate, these last three factors—the need to avoid piecemeal litigation, the application of state law, and the adequacy of the forum in Delaware—provide exceptional circumstances that warrant abstention in this case. All of the shareholders of IBP as well as the Defendants deserve a clear, uniform, and expeditious resolution of the issues presented here and in Delaware. Since only one court should proceed ahead to accomplish that goal, it should be a court in Delaware, which can resolve all of the shareholders' claims by applying Delaware law to the facts. Federal district courts have abstained before in circumstances that were similar, though not as compelling, as those presented here. *See International Jensen, Inc. v. Emerson Radio Corp.*, 1996 WL 494273 (N.D.Ill. Aug.27 1996); *Gabelli v. Sikes Corp.*, 1990 WL 213119 (S.D.N.Y. Dec.14, 1990). The Court will likewise stay its hand in this case.

The action will be stayed, but not dismissed, to allow the Court to retain jurisdiction "in case the state litigation 'washes out' for some reason and fails to reach its anticipated end of a final decision on the merits." *See LaDuke*, 879 F.2d at 1562. Because the Court is abstaining, Plaintiff's Motion for a Temporary Restraining Order and Motion for Expedited Discovery are moot. Accordingly,

IT IS ORDERED:

(1) that Defendants' Motion to Stay is granted; and

(2) that Plaintiff's Motion for a Temporary Restraining Order and Motion for Expedited Discovery are both denied as moot.