Parvin E. DAY, Ronald E. Snider, Allan L. Hanft, Carl E. Bozsa, Charles R. Pruett, a/k/a Ronald Pruett, Michael Day, Deborah Forsythe, Joseph J. Church, and Howard Paper Mills, Inc., Plaintiffs–Appellants,

v.

UNION MINES INC., Defendant–Appellee.

No. 87–1694.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1987.

Decided Nov. 21, 1988.

David P. List, J. Andrew Schlickman and Robert P. Biskup, Sidley & Austin, Chicago, Ill., for plaintiffs-appellants.

Daniel C. Emerson, Bose, McKinney & Evans, Indianapolis, Ind., for defendant-appellee.

Before WOOD, Jr. and CUDAHY, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

This is an appeal from the district court's order staying proceedings pending resolution of state court litigation between the same parties. Although the district court did not mention by name the case of *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) in its stay order, the authority for this type of stay is governed by that case and its progeny. After considering the record below in light of the factors laid out in *Colorado River* and subsequent cases, we affirm the district court's decision.

## I. Statement of Facts.

Plaintiffs-appellants were the sole shareholders (the "Shareholders") of Bicknell Minerals, Inc. ("Bicknell"), an Indiana coal mining company. They sold their stock to defendant-appellee Union Mines Inc. ("UMI"), a Maryland corporation, through a stock purchase agreement dated February 5, 1981 (the "Stock Purchase Agreement"). The Stock Purchase Agreement required payment of $2,000,000 to the Shareholders, and also included a clause providing for payment of the purchase price out of cash flow. The interpretation of that clause is the subject of the complaint in this federal action.

The February 5, 1981 sale did not, however, end the relationship between UMI and the Shareholders, a relationship which progressively took on a more hostile character. Before and after the sale, Bicknell was managed by the Parday Corporation which is solely owned by one of the Shareholders, Parvin E. Day, according to the terms of a mine management services agreement (the "Management Agreement"). A dispute between UMI and Parvin E. Day arose over the rights to a certain piece of real estate (the "Haseman tract"), which Mr. Day had purchased for Bicknell. This dispute was the subject of a suit filed by Bicknell and UMI in the Superior Court of Knox County, Indiana on May 11, 1981. On May 29, 1981, Bicknell terminated the Management Agreement with Parday Corporation allegedly because of hostile actions by the Shareholders. Parday Corporation and the Shareholders brought a breach of contract action in state court on August 4, 1981 against UMI, Bicknell and Union Miniere, S.A. (UMI's parent company) based on the termination of the Management Agreement. A final state court action was brought by Parday Corporation on September 19, 1984 to enforce liens on the mine for royalty payments withheld by UMI and Bicknell. As is apparent from the foregoing, the parties now seeking a federal adjudication originally filed suits in the Indiana state courts.

The three separate state actions were consolidated in the Superior Court of Knox County, Indiana and after a series of counterclaims and supplemental complaints now include several other claims by both sides of wrongdoing in the contractual relations between the parties. The Shareholders counterclaimed that the Stock Purchase Agreement was void as a result of undue influence and economic duress. A supplemental complaint was filed by UMI and Bicknell against the Shareholders alleging certain breaches of representations and warranties as to Bicknell's compliance with federal and state laws and to the truth of the technical and financial data provided by the Shareholders to UMI. The Shareholders' second amended counterclaim sought to enforce an alleged oral agreement made prior to the Stock Purchase Agreement which required that UMI pay the $2,000,000 at the closing rather than at such time as there was positive cash flow.

Discovery has been conducted regarding many of these issues and some of the disputes raised in state court have been disposed of. The dispute regarding the Haseman Tract was resolved by an agreement to extend indefinitely the temporary restraining order issued by the Superior Court on May 11, 1981. The Superior Court granted on January 26, 1981 UMI's

---

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

motion for summary judgment on the Shareholders's second amended counterclaim and found that the Stock Purchase Agreement was enforceable. On July 15, 1985, the Indiana Court of Appeals affirmed the trial court's decision in *Day v. Bicknell Minerals, Inc.*, 480 N.E.2d 567 (Ind.Ct.App.1985). The Superior Court granted UMI and Bicknell leave on September 22, 1987 to file its second amended complaint which included in Count III a request for a declaratory judgment that the Stock Purchase Agreement required payment only after Bicknell generated a positive cash flow. On November 6, 1987, UMI and Bicknell filed in state court a motion for summary judgment on Count III of their second amended complaint.

The appeal of the federal district court's stay order was argued before us on December 1, 1987. In January 1988, the Honorable Edward C. Theobald, the judge who had handled the state court litigation since 1981, recused himself because his daughter had joined the firm representing UMI in this action. He certified the case to the Indiana Supreme Court for the appointment of a new judge. Acting on UMI's interlocutory appeal of Judge Theobald's entry of partial summary judgment against UMI and Bicknell on the issue of the alleged breach of the Management Agreement, the Indiana Court of Appeals reversed on April 14, 1988. (*Union Miniere, S.A. v. Parday Corp.*, 521 N.E.2d 700 (Ind. Ct.App.1988)). The original trial date had been continued indefinitely because of UMI's interlocutory appeal. That court's remand of the issue to the trial court removes all barriers to the state court disposition of the issues pending only the appointment of a new judge. The parties agree that we should take judicial notice of these post oral argument developments in our decision.

The Shareholders have made two attempts to have their claims resolved in federal court. Early in the proceedings, the Shareholders attempted unsuccessfully to remove them to the United States District Court for the Southern District of Indiana. That attempt failed because four of the Shareholders are Indiana citizens and because Bicknell is an Indiana Corporation. The present action was originally filed by them in Colorado on December 6, 1985 but was transferred to the Southern District of Indiana. Diversity exists in Indiana only because Bicknell has been dropped as a defendant. The complaint seeks to establish that the positive cash flow of the Stock Purchase Agreement is simply a timing provision and not a condition precedent to payment of the $2,000,000 or that, if it is a condition precedent, the condition is excused due to UMI's failure to operate the mine properly.

## II. Analysis.

### A. Whether the concurrent suits are parallel.

The decision to stay proceedings pending resolution of a parallel state action is reversed only for an abuse of the district court's discretion. *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 665, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504 (1978); *Ill. Bell Tel. Co. v. Ill. Commerce Comm'n*, 740 F.2d 566, 569 (7th Cir.1984). To determine whether the court here abused its discretion we must first determine whether the federal and state suits are parallel. *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir.1988) (citations omitted). Next, we consider the factors listed in *Colorado River* and its progency to determine whether there are exceptional circumstances permitting a stay "for reasons of wise judicial administration ..." *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246.

Suits are " 'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Calvert Fire Ins. Co. v. Am. Mut. Reins. Co.*, 600 F.2d 1228, 1229 n. 1 (7th Cir.1979). The two parties to the federal action, the Shareholders and UMI, are the real parties in interest in virtually every aspect of the state proceedings. The Shareholders were all either employees or officers of Parday Corporation, which is solely owned by Mr. Day, so that even the dispute regarding the Management Agree-

ment closely involved the Shareholders. The more difficult question is whether substantially the same issue raised in federal court was present in state court at the time of the district court stay. A related question is whether the amendments to the state court pleadings made subsequent to the stay should have any impact on our decision.

The precise issue raised in the district court—the proper interpretation of the *payment* provision in the Stock Purchase Agreement—was not present in state court at the time the stay was entered. However, "we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir.1985) (citations omitted). This test requires a district court judge to make a determination as to what issues will be resolved based on the status of the state litigation at the time the stay is requested.[1]

The resolution of the state claims included in the pleadings at the time the stay was entered theoretically would not necessarily have disposed of the payment provision issue in federal court. But the federal lawsuit like the state lawsuit centers on the proper interpretation of the Stock Purchase Agreement and the performance of the parties thereunder. It is true that the question of interpreting the payment provision was not specifically raised originally in state court. However, that issue would never arise if it was determined that the Shareholders had breached warranties and representations which relieved UMI of its obligations under the contract.

On the other hand, if the state court found the Shareholders entitled to recover because there was no breach on their part or because they had substantially performed, the question of payment would inevitably arise in connection with determining the relief to which they were entitled.

The Shareholders' federal litigation seeking an interpretation of the payment provision was, therefore, premature. That question will arise only after an ultimate determination that the contract is valid and the Shareholders are entitled to relief. *See Hooser v. Baltimore & Ohio R.R. Co.*, 279 F.2d 197, 199 (7th Cir.1960).

■ The overriding subject matter of the state court litigation is the cluster of rights and obligations of UMI and the Shareholders to each other, and the question of if and when the Shareholders are entitled to any payments will almost inevitably be resolved there. Where the validity, enforceability and interpretation of a contract are at issue in both federal and state courts, and the state litigation was commenced first and has progressed substantially towards completion, entry of a stay does not under *Colorado River* constitute an abuse of discretion.

The Shareholders' attempt to distinguish the federal suit from the state proceedings by arguing that the contract interpretation claim arose only in 1985 when UMI rejected the Shareholders' demand for payment and therefore "was not ripe for adjudication at the time any of the three state-court cases were filed." Brief of Plaintiffs–Appellants at 13. As discussed previously, the questions relating to the contract payment provision in one sense have not yet arisen and will not until the Shareholders are held to be entitled to relief.

The Shareholders then attempt to show that their case is governed by *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28 (6th Cir.1984), in which the court reversed a stay order after finding that the concurrent suits were not parallel. In *Crawley*, prison inmates brought claims of constitutional violations in separate proceedings based on the conditions of the same correctional facility during two distinct time periods. The defendants in the state suit were city officials, while those in the federal suit were

---

1. In this case, Judge Brooks ordered the parties to keep him advised of the progress in the state court cases. As a result, Judge Brooks could lift the stay in the event that his prediction about the issues likely to be litigated in state court

proves wrong. *See Lumen Constr.*, 780 F.2d at 698 (discussing the reasons favoring a stay over a dismissal of the federal proceedings); *Interstate Material Corp.*, 847 F.2d at 1290 (same).

county officials. In addition, the federal suit included a host of separate issues not raised in the state suit. The *Crawley* court cited all of these factors in arriving at its decision that the proceedings were not parallel. 744 F.2d at 31.

The present case is substantially different from *Crawley*, because here the same parties are in both proceedings, the state proceedings rather than the federal ones are the more comprehensive ones, *see Lumen Constr.*, 780 F.2d at 695, and because the relevant time period and the basic contract disputes are the same for both the various state claims and the federal contract interpretation claim. Only the Shareholders' demand for payment under the Stock Purchase Agreement and UMI's nonpayment are recent developments. However, the success of the Shareholders' federal claim, as well as many of the other issues in the state court cases, turns on the proper interpretation of the Stock Purchase Agreement which must be based on the intent of the parties at the time of contracting. *Keystone Square Shopping Center Co. v. Marsh Supermarket Inc.*, 459 N.E. 2d 420 (Ind.Ct.App.1984).

The Shareholders argue that the district court must not base its stay decision on the fact that the state proceedings could be modified to include the contract interpretation issues. Brief of Plaintfffs–Appellants at 12. They quote the *Crawley* language that "[t]he issue is whether [the state court action], as it currently exists, *is* a parallel, state proceeding," 744 F.2d at 31, in their support. The proceedings were in fact parallel, as we have pointed out, since the district court judge could reasonably assume that the federal issue would be decided in the full course of the state litigation.

█ Moreover, even if the proceedings were not parallel at the time the stay was entered, they are parallel now as a result of the filing of UMI's second amended state court complaint requesting declaratory judgment on the contract interpretation issue.[2] We addressed the question of

whether a reviewing court should consider the progress in the state proceedings made after a *Colorado River* stay has been entered in *Ill. Bell Tel. Co. v. Ill. Commerce Comm'n*, 740 F.2d 566, 570 (7th Cir.1984):

> Ordinarily, it would be appropriate for a reviewing court to determine the propriety of a district court's decision whether to stay a suit on the basis of the facts as they appeared at the time the motion to stay was filed.... (citations omitted). The purpose of the *Colorado River* doctrine, however, is the conservation of state and federal judicial resources. Where the progress of the state suit has changed significantly since the motion to stay the federal suit was filed, it would defeat that purpose to ignore the subsequent events. Thus, this court has looked to facts occurring in state court subsequent to the motion to stay in federal court. *See Board of Education v. Bosworth*, 713 F.2d 1316, 1321–22 (7th Cir.1983); *Evans Transportation Co. v. Scullin Steel Co.*, 693 F.2d 715, 719–20 (7th Cir.1982).

█ This case presents a slightly different question than that addressed in *Illinios Bell*. Here, we are asked to consider the later proceedings to determine whether the cases are parallel, not simply to determine which proceedings have progressed the farthest. We are also considering a later amendment to the pleadings and a motion on which no action has been taken in the state court. Nevertheless, we find that the *Colorado River* doctrine's goal of conserving judicial resources is best served by taking notice of UMI's second amended complaint which makes the issues in state court mirror those raised in federal court.

The Shareholders would like us to believe that the addition of Count III in the second amended state court complaint is an admission on the part of UMI that, in fact, the proceedings were not parallel when the stay was entered. Appellant's Response to Appellee's Motion to Take Judicial Notice. However, because we have found that

---

2. UMI filed a Motion to Take Judicial Notice of State Court Pleadings and Other Papers on November 12, 1987 to which the Shareholders responded noting their objections. We grant that motion for the reasons given herein in substance.

there is no requirement of exact parallelism in the legal issues raised, the Shareholders' argument has little weight. In addition, as previously pointed out, even without the amendment, the state court proceedings would almost inevitably have disposed of the issue raised by the Shareholders in this case and in UMI's Count III. Moreover, a stay should be upheld in the interests of judicial economy if the concurrent suits are parallel at the time of review, as they are here, even if they were not parallel when the stay was entered.

█ An important question raised by the Shareholders, *ibid.*, is whether affirming the stay will set a precedent which will make it possible for a party, by amending its state court pleadings, to prevent a federal plaintiff from having a hearing on a claim otherwise cognizable in federal court. For several reasons, a federal plaintiff's right to be heard is not compromised by this decision. As an initial matter, the state rules limiting the issues that can be raised in amendments provide some assurance that only those federal claims which are closely related to the ongoing state litigation could be incorporated in an amendment and stayed.[3] Second, the fact that the proceedings are parallel is not sufficient alone to justify a federal stay without the presence of the other *Colorado River* factors.[4] Finally, if there is evidence of bad faith on the part of the party attempting to stay out of federal court, a district court or a reviewing court can deny

a party's motion to stay the federal proceedings.

### B. Whether the Colorado River factor analysis supports the stay.

█ Having found that the federal and state proceedings are parallel, we apply the *Colorado River* factors to the facts of this case. The *Colorado River* Court emphasized "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" which is excused only in "exceptional" circumstances. 424 U.S. 800, 818–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976). Although "[n]o one factor is necessarily determinative," *id.* at 818, 96 S.Ct. at 1247, the *Colorado River* doctrine now includes at least ten factors which may be considered in deciding whether exceptional circumstances exist. *See Lumen Constr.*, 780 F.2d at 694–95 (listing the ten factors). The *Colorado River* doctrine requires that a federal trial judge in applying the factor analysis find something more than parallelism, such as a federal policy which favors staying the proceedings which is evidenced, for example, by a federal statute or rule.[5]

The factor most apparent in the district court's order granting the stay here is the priority in the state proceedings shown by the far greater progress made in that court compared to the lack of progress in federal court. The Shareholders argue that there has been no progress in state court on the specific claim raised in federal court. Because there has been substantial state

---

3. Indiana's Rule of Trial Procedure 15(A) provides that "leave shall be given when justice so requires." Ind.Code Ann., tit. 34, Rule 15(A) (West 1987). Leave to amend is given unless amendment will prejudice the opposing party. *Huff v. Travelers Indem. Co.*, 266 Ind. 414, 363 N.E.2d 985, 989 (Ct.App.1977).

4. As discussed *infra*, the *Colorado River* doctrine supports federal policies, such as those evidenced by the requirement of complete diversity of litigants to obtain a federal forum and the 28 U.S.C. § 1441 rule for removal. These rules show that federal jurisdiction should not be exerted over a removable claim which is related to non-removable state litigation, such as the one brought by the Shareholders in this case. A party's right to a federal forum on a diversity claim is protected by 28 U.S.C. § 1441

to the extent that the claim is "separate and independent." Our decision does not remove that protection.

5. *See, e.g., Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247 (federal policy in favor of comprehensive adjudication of water rights); *Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 569, 103 S.Ct. 3201, 3215, 77 L.Ed.2d 837 (1983) (same policy); *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) (stay of federal proceedings upheld, since a federal court's exercise of jurisdiction is discretionary under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (1970)). *See also* Note, *Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of Colorado River,* 44 U.Chi.L.Rev. 641, 665–80 (1977).

court progress in the basic contractual disputes which will undoubtedly be dispositive of the federal claim as well, this overall progress should be determinative rather than the lack of progress on one specific legal theory.

Another related factor in favor of the stay is the danger of piecemeal litigation presented if both proceedings were allowed to go on simultaneously. *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246, *citing Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942). "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results ..." *Am. Int'l Underwriters, (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir.1988). Dual proceedings could involve what we have called a "grand waste of efforts by both the court and parties in litigating the same issues regarding the same contract in two forums at once." *Microsoftware Computer Sys. v. Ontel Corp.*, 686 F.2d 531, 538 (7th Cir.1982). Moreover, the possibility of conflicting results is very present here since both state and federal cases depend on interpretation of the same contract. We have also noted that the possibility of sharing discovery on parallel issues does not alleviate that waste of judicial resources since the two forums "see each case uniquely and must hear evidence and arguments on each point raised throughout the course of the litigation, no matter how routine it becomes for counsel." *Id.* at 534.

Here, the case for a stay of the federal proceedings is even stronger than in *Microsoftware*, because discovery as to the intent that the Stock Purchase Agreement be binding on the parties and its interpretation has already been conducted. This discovery covered the negotiations leading up to the final Stock Purchase Agreement, *Day v. Bicknell Minerals, Inc.*, 480 N.E.2d 567, 569 (Ind.Ct.App.1985), which is relevant to the interpretation issue raised in district court. *See Michels v. Dyna–Kote Indus., Inc.*, 497 N.E.2d 586, 589 (Ind.Ct.

App.1986) ("to the extent an instrument is ambiguous we may consider the situation of the parties, their motives in dealing with each other, and the object sought to be accomplished in determining the intent of the parties"). The *Colorado River* policy in favor of wise judicial administration is furthered by deference to the state court which has already overseen discovery on related issues. "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176.

Even if *Colorado River* did not compel a stay based on the already substantially completed proceedings in the state court, the federal proceedings should be stayed because, as previously indicated, they now parallel those in state court. The district court does not have the power to force the Indiana Superior Court to leave the contract interpretation issue for federal decision. *See Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1982). In *Arizona*, the Federal Government argued that Indian water rights in states which entered the Union by federal legislation which reserved to Congress absolute control over Indian lands could be adjudicated separately from all the other water rights decisions "and could simply be incorporated into the comprehensive state decree at the conclusion of the state proceedings." *Id.* at 567, 103 S.Ct. at 3213–14. The Court found that the federal suits should be stayed in deference to the state proceedings, because the Government's argument for separate adjudications "assume[d] a cooperative attitude on the part of state courts, state legislatures, and state parties which is neither legally required nor realistically always to be expected." *Id.* at 568–69, 103 S.Ct. at 3214–15.

In addition to the policies against piecemeal litigation and in favor of completion of already ongoing state litigation, we find an additional policy against the type of reactive suit brought here by the Shareholders.[6] That policy

6. Although UMI argues that the Shareholders' federal suit is vexatious, Brief of Defendant–Ap-

against hearing a federal claim which is related to ongoing non-removable state proceedings is evidenced by the 28 U.S.C. § 1441(b) rule governing removal of state court actions. That rule makes it possible, at the discretion of the district court, for an otherwise non-removable set of claims to be removed from state court upon being joined to a removable claim. However, removal is allowed only when the removable claim is "separate and independent." 28 U.S.C. § 1441(b) (1982).[7] When considered in light of the federal policy of judicial economy furthered by deciding all disputes between a party in one forum,[8] the only possible reason for the distinction between unrelated and related claims is that related removable claims should be decided in state court along with the non-removable claims. This distinction makes sense because diverse parties are less likely to be prejudiced by the bias of an out-of-state court when their interests are closely aligned with non-diverse parties.

Part of the rationale behind our decision in *Microsoftware* to uphold the *Colorado River* stay was that the federal plaintiff, MCS, had passed up an opportunity to be heard in federal court. We noted that diversity jurisdiction was meant to protect out-of-staters from bias in state court but that MCS, an Illinois corporation, had already foregone an opportunity to avoid any bias it might have experienced in New York state court by removing the New York suit to federal court. The Shareholders argue that their attempt from the beginning to be heard in federal court is a factor weighing in favor of reversing the district court stay. Brief of Plaintiffs–Appellants at 22. The Shareholders tried to remove and failed, because they could not show complete diversity. We would be de-

fying the policies behind the requirement of complete diversity and the Section 1441 rule for removal by now granting the Shareholders a right to a federal forum as well as the state forum they originally invoked and still have.

A final factor in favor of the *Colorado River* stay in this case is that all the issues to be decided are governed by state law. Although the Supreme Court, in *Moses H. Cone Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), wrote in dicta that "in some *rare* circumstances the presence of state-law issues may weigh in favor of that surrender [of jurisdiction]," *id.* at 26, 103 S.Ct. at 942 (emphasis added), we have found that a state court's expertise in applying its own law favors a *Colorado River* stay. *Cf. Medema v. Medema Builders, Inc.,* 854 F.2d 210 (7th Cir.1988). Especially in a case such as this one where the litigation has been going on for many years and related discovery has been conducted, the state court should be able more quickly and effectively to decide the state law issues. *See, e.g., Lumen Constr.,* 780 F.2d at 696, *citing Cannady v. Valentin,* 768 F.2d 501, 503 (2d Cir.1985); *Evans Transp. Co. v. Scullin Steel Co.,* 693 F.2d 715, 720 (7th Cir.1982); *Microsoftware,* 686 F.2d at 537.

Because we find that the concurrent state and federal proceedings between UMI and the Shareholders are parallel and that the *Colorado River* factors strongly support the stay, we affirm the district court's order staying the proceedings before it.

---

pellee at 21–23, the record does not conclusively show that the Shareholders were acting in the defensive manner that the plaintiffs in *Calvert Fire Ins. Co. v. Am. Mut. Reins. Co.,* 459 F.Supp. 859 (N.D.Ill.1978), *aff'd,* 600 F.2d 1228 (7th Cir. 1979), exhibited. There, plaintiff Calvert's filing of the federal suit based on the same issues already decided in state court "was intended to delay the proceedings in the state court and to obtain two adjudications with two possible appeals of the same legal issue." 459 F.Supp. at 862. It is much less certain in the present case

that the Shareholders were acting vexatiously. Nevertheless, for the reasons stated, the Shareholders' reactive suit should be stayed.

7. Part of the rationale for Section 1441 is to prevent a plaintiff from compromising a defendant's right to removal by joining in the suit unrelated non-removable claims.

8. This policy is also behind the doctrines of ancillary and pendent jurisdiction.