FOFI HOTEL COMPANY, INC., an
Illinois Corporation, Plaintiff,

v.

DAVFRA CORPORATION, an Ohio corpo-
ration; HMS Property Management
Group, Inc., an Ohio corporation; W.
David Temel; and Frank Leonetti, Jr.,
Defendants.

No. 92 C 2778.

United States District Court,
N.D. Illinois, E.D.

Feb. 14, 1994.

### MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge. ·

Before the Court are Plaintiff's objections to Magistrate Judge Lefkow's Report and Recommendation granting Defendants' Motion to Stay the present proceeding pending resolution of Case No. CV–229333 in the Court of Common Pleas, Cuyahoga County, Ohio.

### FACTS

Plaintiff, Fofi Hotel Company, Inc. ("Plaintiff"), is an Illinois corporation which has its principal place of business in Chicago, Illinois. Prior to the transaction at issue in this case, Plaintiff owned the Ramada Inn Metrocenter Hotel ("the Hotel") located in Phoenix, Arizona.

Defendant HMS Property Management Group ("HMS") owns, develops and manages hotel and resort properties in various locations throughout the United States. Defendant Davfra Corporation ("Davfra") was incorporated on November 23, 1990 specifically for the purpose of acquiring the Ramada Inn Metrocenter Hotel.

On November 7, 1990, Defendant David Temel ("Temel"), the president and chief executive officer of both HMS and Davfra, met with two of Plaintiff's representatives to discuss the essential terms and conditions of the purchase of the Hotel. The parties agreed on a purchase price of $6 million. They also agreed that the buyer would sign a $2.7 million promissory note, take the property subject to a $3.1 million mortgage and pay the remainder of the purchase price at the closing. Additionally, Temel and Defendant Frank Leonetti, the senior vice president of HMS and Davfra, also consented to personally guarantee the note.

After Davfra's incorporation on November 23, 1990, the parties substituted Davfra, for HMS, as the purchaser of the hotel and HMS became an additional guarantor on the note. The transaction closed on December 5, 1990.

Davfra made payments on the promissory note until January, 1992. On March 16, 1992, the Plaintiff declared the note in default on March 16, 1992 and accelerated the amounts due. Ten days later, Davfra filed an action against the Plaintiff in the Court of Common Pleas, Cuyahoga County, Ohio ("Ohio action") alleging that the Plaintiff fraudulently induced Davfra into executing the promissory note and breached a duty of good faith and fair dealing. In the Ohio action, Davfra requests damages, rescission of the note and an injunction against its enforcement.

On April 27, 1992, the Plaintiff filed suit in this Court against Davfra on the note and against HMS, Temel and Leonetti on their guaranty. The Defendants moved to dismiss for lack of personal jurisdiction and in the alternative to stay the proceedings pending resolution of the Ohio case.

On August 2, 1993, the Magistrate Judge issued a Report and Recommendation finding that there was personal jurisdiction over all of the Defendants, and thus denying the Defendants' motion to dismiss. The Magistrate Judge held further that, although the case should not be stayed under the *Colorado River* doctrine, a stay was appropriate under 735 ILCS 5/2–619(a)(3). The Plaintiff objects to the Magistrate Judge's recommenda-

tion that this Court grant Defendant's motion to stay pending resolution of the Ohio case.[1]

### ANALYSIS

Guided by Federal Rule of Civil Procedure 72(b), this Court shall make a de novo determination upon the record of any portion of the Magistrate Judge's Report and Recommendation to which the parties have made specific objections. Fed.R.Civ.P. 72(b).

Section 2–619(a)(3) of the Illinois Code of Civil Procedure provides that a defendant "may file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds ... (3) That there is another action pending between the same parties for the same cause." 735 ILCS 5/2–619(a)(3).

In *Seaboard Finance Company v. Davis,* 276 F.Supp. 507, 516 (1967), the court applied the predecessor of Section 2–619(a)(3) to stay the suit in federal court pending resolution of an action in California state court between the same parties for the same cause. Following *Erie* and its progeny, the *Seaboard* court held that a federal court's application of a state statute, specifically Section 2–619(a)(3), was appropriate. *Id.*

The *Seaboard* court noted that *Erie* and its progeny require a federal court to consider three factors in determining whether to apply a state law. *Id.* at 515. These three factors include: (1) whether the variance between the state and local rule is such that it will affect the outcome of the litigation; (2) whether the variance is of a nature that it would encourage forum shopping; and (3) whether there is some countervailing federal consideration which would justify the variance. *Id.* Only if the countervailing considerations outweigh the possibilities of divergent administration of the laws and forum shopping, should the federal rule be applied. *Id.*

The *Seaboard* court found that there was substantial variance between the practice in Illinois courts and the practice in federal courts. *Id.* at 516. Illinois courts applied

the predecessor of Section 2–619(3)(a) to dismiss or stay repetitive suits while federal courts allowed repetitive suits to proceed concurrently. *Id.* The *Seaboard* court concluded that such variance would encourage forum shopping and that no countervailing federal consideration existed to justify such variance. *Id.*

Nine years after *Seaboard,* the Supreme Court, in *Colorado River Water Conser. Dist. v. U.S.,* 424 U.S. 800, 816, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976), confirmed the existence of a federal abstention doctrine. While mindful of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," the *Colorado River* court noted that a federal court may stay a parallel action based "on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817, 96 S.Ct. at 1246. Thus, the *Colorado River* court concluded that "the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. 424 U.S. at 816, 96 S.Ct. at 1245 citing *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910).

With the development of the *Colorado River* doctrine, the possibility of a conflict between the federal doctrine of abstention and Section 2–619(a)(3) arose. Thus, whether a variance sufficient to encourage forum shopping existed and whether such a variance would be outweighed by countervailing federal considerations had to be reassessed. *See, International Insurance Company v. Certain Underwriters at Lloyd's London,* 1992 U.S.Dist. LEXIS 6164 (N.D.Ill.1992) (Weisberg, M.J.) and *W.E. O'Neil Constr. Co. v. National Union Fire Insurance Co.,* 721 F.Supp. 984–988–90 (N.D.Ill.1989) (Rovner, J.).

Unfortunately, the Seventh Circuit has not decided whether the *Colorado River* doctrine conflicts with Section 2–619(a)(3) and if so, whether *Erie* and its progeny require federal

---

1. The Defendants do not object to the Magistrate Judge's finding that this Court has personal jurisdiction over all of the Defendants. Consequently, this Court affirms and adopts the Magistrate Judge's Report and Recommendation to the extent that it denies the Defendants' Motion to Dismiss.

courts sitting in diversity to apply the *Colorado River* doctrine or 2–619(a)(3). *Aetna Casualty & Surety Co. v. Kerr–McGee Chemical Corp.*, 875 F.2d 1252 (7th Cir.1989).

The Plaintiff relies principally on *W.E. O'Neil Constr. Co. v. National Union Fire Insurance Co.*, 721 F.Supp. 984, 988–90 (N.D.Ill.1989) (Rovner, J.), to support its position that the Magistrate Judge erroneously applied Section 2–619(a)(3) to stay the instant proceeding pending resolution of the Ohio case.

In *W.E. O'Neil*, the court noted that the factors considered by a court in determining whether to dismiss under Section 2–619(a)(3) are the same as the factors for determining whether to stay under the *Colorado River* doctrine. 721 F.Supp. at 989 n. 3. The *W.E. O'Neil* court found that the only difference which existed between the *Colorado River* doctrine and Section 2–619(a)(3) was in the remedies provided: the *Colorado River* doctrine encourages a stay whereas Section 2–619(a)(3) provides no preference for a stay as opposed to a dismissal. 721 F.Supp. at 989. The *W.E. O'Neil* court defined this difference as "merely procedural," and thus concluded that application of Section 2–619(a)(3) in a federal court sitting in diversity was inappropriate.[2] *Id. See also, Indiana Lumbermens Mutual Ins. Co. v. Specialty Waste Services, Inc.*, 774 F.Supp. 525, 527–28 (C.D.Ill.1991) (Mills, J.); *Chicago Trust & Title Company v. Sizes Unlimited, Inc.*, 1991 WL 119147, *2 (N.D.Ill.1991) (Duff, J.). Finally, the *W.E. O'Neil* held that its conclusion was buttressed by the "unflagging obligation of federal courts to exercise the jurisdiction given them," and the extensive body of law governing the appropriateness of the *Colorado River* doctrine of abstention. *Id.*, citing *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.

In contrast to *W.E. O'Neil, Chicago Trust & Title*, and *Indiana Lumbermens*, other judicial decisions in this district continue to rely on *Seaboard* and apply Section 2–619(a)(3). Unfortunately, many of these cases do not address the potential conflict between the *Colorado River* doctrine and Section 2–619(a)(3). *See, In re Quantum Chemical Lummus Crest*, 1993 WL 135449, *2 (N.D.Ill.1993) (Plunkett, J.); *Fawcett v. Ditkowsky*, 1992 WL 186065, *2 (N.D.Ill. 1992) (Plunkett, J.); *Davis v. Rowe*, 1992 WL 5905, at *2 (N.D.Ill.1992) (Kocoras, J.).

After reviewing the conflicting case law in this district, the Magistrate Judge based her decision to apply Section 2–619(a)(3) on (1) the Seventh Circuit's decision in *Locke v. Bonello*, 965 F.2d 534 (7th Cir.1992), which found *Seaboard*'s reasoning persuasive, and (2) on the variance in the tests applied under the *Colorado River* doctrine and under Section 2–619(a)(3), which according to the Magistrate Judge, would encourage forum shopping.

In *Locke v. Bonello*, 965 F.2d 534, 535–36 (7th Cir.1992), the Seventh Circuit held that Illinois' "saving statute" which gave plaintiffs a one year grace period to refile a claim, which was previously voluntarily dismissed was tolled while defendants appealed the order allowing voluntary dismissal. In support of their argument that the Illinois "saving statute" was tolled, the plaintiffs stated that if they had refiled in federal court while the state appeal was pending, the defendants would have made a motion to dismiss the federal action pursuant to Section 2–619(a)(3). *Id.* at 535. Finding the reasoning in *Seaboard* persuasive, the *Locke* court agreed with plaintiffs that had they refiled their claim in federal court while the state appeal was pending, Section 2–619(a)(3)

---

2. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) generally governs conflicts between state and federal law in diversity cases. Essentially, the *Erie* doctrine subsumes three distinct types of cases. *See generally* Ely, *The Irrepressible Myth of Erie*, 87 Harv.L.Rev. 693, 6998 (1974). The third type of case, which is relevant here, arises when a federal common law rule conflicts with state law; in that event the Rules Decision Act, 28 U.S.C. § 1652, governs the choice between state and federal law. *Hanna v. Plumer*, 380 U.S. 460, 465–468 & 468 n. 9, 85 S.Ct. 1136, 1140–1142 & 1142 n. 9, 14 L.Ed.2d 8 (1965). In dicta, the Supreme Court indicated in *Hanna* that a state law is substantive and should be applied where the choice of federal law would encourage forum shopping or lead to an inequitable administration of the laws. *See, In Re Air Crash Disaster Near Chicago, May 25, 1979*, 803 F.2d 304, 315 (7th Cir.1986) citing *Hanna*, 380 U.S. at 465–468 & 468 n. 9, 85 S.Ct. at 1140–1142 & 1142 n. 9.

would have mandated dismissal. *Id.* at 535–36.

In addition to finding the reasoning in *Seaboard* persuasive, the *Locke* court criticized *Indiana Lumbermens Mutual Insurance Co. v. Specialty Waste Services, Inc.,* 774 F.Supp. 525 (C.D.Ill.1991) which held that under *Colorado River,* Section 2–619(a)(3) should no longer be applied by federal courts. 965 F.2d at 538 n. 3. The *Locke* court noted that the *Indiana Lumbermens* court, in support of its holding, quoted the following language from *Colorado River:* "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....'" 774 F.Supp. at 527 (quoting *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246 (quoting in turn *McClellan v. Carland,* 217 U.S. 268, 283, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910))). In response to the *Indiana Lumbermens* court's reliance on *Colorado River,* the *Locke* court stated, "we cannot see why this general statement by the Supreme Court necessarily requires federal courts to disregard paragraph 2–619(a)(3). In *Colorado River,* the Supreme Court did not discuss the validity of any particular state statute or Section 2–619(a)(3)." 965 F.2d at 538 n. 3.

■ Despite its criticism of *Lumbermens,* the *Locke* court expressly noted that it did not decide whether Section 2–619(a)(3) applies in diversity cases in federal court under the Rules Decision Act and *Erie. Locke,* 965 F.2d at 537 n. 2. Consequently, this Court holds that the variance in the tests applied and remedies provided under the *Colorado River* doctrine and Section 2–619(a)(3), and not the Seventh Circuit's decision in *Locke,* must ultimately determine whether a federal court sitting in diversity should apply Section 2–619(a)(3) to prevent forum shopping or an inequitable administration of the law.

■ Before a court applies the federal doctrine of abstention, it must inquire whether the concurrent state and federal proceedings are parallel. *Caminiti and Iatarola, Ltd. v. Behnke Warehousing,* 962 F.2d 698, 700 (7th Cir.1992). Suits are "parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Day v. Union Mines Inc.,* 862 F.2d 652, 655 (7th Cir.1988), citing *Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.,* 600 F.2d 1228, 1229 n. 1 (7th Cir.1979). In *Day,* the Seventh Circuit stated that it looks "not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." 862 F.2d at 656 citing, *Lumen Constr. Inc. v. Brant Constr. Co., Inc.,* 780 F.2d 691, 695 (7th Cir.1985).

[3] Similarly, before a court applies Section 2–619(a)(3), it must determine whether "there is another action pending between the same parties for the same cause." 735 ILCS 2–619(a)(3). In *Terracom Dev. Group v. Westhaven,* 209 Ill.App.3d 758, 760, 154 Ill. Dec. 376, 378, 568 N.E.2d 376, 378 (1st Dist. 1991), the court stated that "the crucial inquiry is whether the two actions arise out of the same transaction or occurrence, not whether the legal theory, issues, burden of proof or relief sought materially differ between the two actions." *Id.,* citing *Tambone v. Simpson,* 91 Ill.App.3d 865, 867, 46 Ill.Dec. 649, 651, 414 N.E.2d 533, 535 (1st Dist.1980). From this sentence, the Magistrate Judge determined that the test applied under *Colorado River* differed from that applied under 2–619(a)(3). The Magistrate Judge concluded that while a finding of parallel actions under the federal doctrine of abstention focuses on the similarity of legal issues, a finding of the "same cause" under 2–619(a)(3) focuses on whether the two actions arose out of the same facts or transaction.

However, such a conclusion ignores the import of the next sentence in *Terracom* which states, "[t]he purpose of the two actions need not be identical, rather there need only be a substantial similarity of the issues between them." *Id.* See also, *Bank of Northern Illinois v. Nugent,* 223 Ill.App.3d 1, 10, 165 Ill.Dec. 514, 523, 584 N.E.2d 948, 957 (2 Dist.1991) (holding that the statute may be invoked to support a dismissal where there is a substantial similarity of issues between the two actions even though the purposes are not identical.) Contrary to the Magistrate

Judge's conclusion, this Court does not find that the test for "parallel actions" differs from the test for the "same cause."

In fact, the *Terracom* court distinguished the case before it from *People ex rel. Phillips Petroleum v. Gitchoff*, 65 Ill.2d 249, 2 Ill.Dec. 367, 357 N.E.2d 534 (1976), where the Illinois Supreme Court concluded that Section 2–619(a)(3) did not require dismissal because the two pending cases confronted independent issues. In *Gitchoff*, one case concerned the insured's liability and the other concerned the insurer's duty to the insured. Unlike in *Gitchoff*, where both actions stemmed from common facts but reached distinct issues, in *Terracom*, both actions would be required to address identical issues and therefore application of Section 2–619(a)(3) was appropriate. *Terracom*, 209 Ill.App.3d at 762, 154 Ill.Dec. at 380, 568 N.E.2d at 380.

While the crucial inquiry under Section 2–619(a)(3) may be whether the two actions arise out of the same transaction, a court contemplating application of Section 2–619(a)(3) must also determine that there is a substantial similarity between the issues in each case. Thus, this Court concludes that the test for deciding whether the actions are parallel under the federal doctrine and under the state statute is the same.

■ In addition to the test for "parallel" actions, this Court also holds that the factors used to decide whether to grant relief under Section 2–619(a)(3) do not differ from the factors considered under the *Colorado Doctrine*. When deciding whether to grant a defendant's 2–619(a)(3) motion, the trial court has discretion and should consider the following factors: (1) comity; (2) the prevention of multiplicity, vexation, and harassment; (3) the likelihood of obtaining complete relief in the foreign jurisdiction; and (4) the res judi-

cata effect of a foreign judgement in a local forum. *Kellerman v. MCI Telecommunications Corp.*, 112 Ill.2d 428, 436, 98 Ill.Dec. 24, 32, 493 N.E.2d 1045, 1053 (1986), *cert. denied*, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986). In *A.E. Staley Mfg. Co. v. Swift & Co.*, 84 Ill.2d 245, 50 Ill.Dec. 156, 419 N.E.2d 23 (1980), the Illinois Supreme Court also considered whether the latter litigation had a legitimate and substantial relation to Illinois in deciding whether dismissal or a stay under Section 2–619(a)(3) was appropriate.[3]

Likewise, under the *Colorado River* doctrine, there are at least ten factors that a district court can consider in deciding whether "exceptional circumstances" exist that would justify deference to the state courts. *Caminiti and Iatarola*, 962 F.2d at 701, citing *LaDuke v. Burlington N.R.R.*, 879 F.2d 1556, 1559 (7th Cir.1989). These factors include: (1) whether the state has assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by concurrent forums; (5) the source of governing laws, state or federal; (6) the adequacy of state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Id.* No one factor is necessarily determinative. *Caminiti and Iatarola*, 962 F.2d at 701.

As Section 2–619(a)(3) applies to parallel actions where both cases are pending in state court in addition to parallel actions where one case is pending in state court and one in federal court, many of the additional factors considered under the *Colorado River* were not elaborated in the *Kellerman* court's dis-

---

**3.** The Magistrate Judge concluded that whether an action has a legitimate and substantial relation to Illinois is not a factor considered under the *Colorado River* doctrine. However, this Court holds that the second factor considered under the *Colorado River* doctrine, the inconvenience of the federal forum, encompasses in part the consideration of whether an action has a legitimate and substantial relation to the state in which it is pending.

Moreover, the *A.E. Staley* court determined that a court, in its discretion, could decide that the relationship between the litigation and Illinois is not so substantial that it supersedes the purpose of Section 6–219(a)(3) to avoid duplicative litigation. *Natural Gas Pipeline v. Phillips Petroleum Co.*, 163 Ill.App.3d 136, 114 Ill.Dec. 372, 377, 516 N.E.2d 527, 532 (1st Dist.1987) (citing *A.E. Staley*, 50 Ill.Dec. at 161, 419 N.E.2d at 28.)

cussion of Section 2–619(a)(3). However, a number of federal courts have applied the factors considered under the *Colorado River doctrine* in determining whether to stay or dismiss a parallel federal action under Section 2–619(a)(3). *See, Byer Museum of Arts v. North River Ins. Co.*, 622 F.Supp. 1381, 1385 (D.C.Ill.1985) (Holderman, J.) (holding that the factors considered under the *Colorado River doctrine* have applicability to a Section 2–619(a)(3) determination)[4] and *Schiller v. Packaging Store, Inc.*, 690 F.Supp. 711, 713–14 (N.D.Ill.1988) (Aspen, J.). In light of the above considerations and case law, this Court is persuaded that, where one parallel action is pending in state court and one in federal court, the factors used to decide whether to grant relief under 2–619(a)(3) are the same as the factors considered under the *Colorado River doctrine. See, W.E. O'Neil*, 721 F.Supp. at 989 n. 3.

■ Finally, some courts have held that Section 2–619(a)(3) differs from the *Colorado River doctrine* in the type of remedies each provides. Section 2–619(a)(3) delegates the decision to dismiss or stay a parallel action to the discretion of the district court. *See, A.E. Staley*, 84 Ill.2d at 248, 50 Ill.Dec. at 159, 419 N.E.2d at 26 (holding that dismissal is not mandated nor the only form of relief afforded by the statute). On the other hand, the Seventh Circuit has held that the proper procedure under the *Colorado River doctrine* is to stay a federal action where a parallel state action is pending. *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 698 (7th Cir.1985). *See also, Aetna Cas. and Sur. v. Kerr–McGee Chemical Corp.*, 875 F.2d 1252, 1261 (7th Cir.1989) (holding that Section 2–619(a)(3) may authorize broader remedies then are available under *Colorado River*.) The Court in *Lumen Const.* noted that a dismissal, even without prejudice, creates a risk that the federal plaintiff will be time barred from reinstating his federal suit if the state proceeding does not result in a final decision on the merits. 780 F.2d at 698. Thus, the *Lumen Const.* court concluded that a stay permits a federal court to retain jurisdiction in case the state proceeding does not end in a final decision on the merits. *Id.*

This Court agrees with *W.E. O'Neil* that any difference in the preferred remedy under the *Colorado River doctrine* and Section 2–619(a)(3) is merely procedural, and thus federal courts sitting in diversity should apply the federal common law rule, not the state statute. *W.E. O'Neil*, 721 F.Supp. at 989. To the extent that the difference in the preferred remedy might create some forum shopping, this Court holds that the countervailing federal interest in "the unflagging obligation of the federal courts to exercise the jurisdiction given them" requires federal courts sitting in diversity to stay, not dismiss, a parallel action when appropriate under the *Colorado River* factors delineated above. *Id.*

■ Given that Section 2–619(a)(3) is inapplicable to the present case, this Court's grant or denial of Defendants' Motion to Stay must depend on whether the federal and the state actions are parallel and if so, whether the *Colorado River* factors weigh in favor of a stay. The Magistrate Judge found that the Ohio action and the federal action were not parallel even though both pertained to the purchase and sale of the Hotel. The Magistrate Judge noted that the federal action involved not only the validity, enforceability and breach of the promissory note but also the validity, enforceability and breach of the guaranty whereas the Ohio action only involves the validity, enforceability and breach of the promissory note.

Without reaching the merits of the case, the Magistrate Judge found it significant that the guaranty specifically stated that it was not contingent on the validity of the note[5]. The Magistrate Judge determined that the

---

4. In deciding that the factors considered in a *Colorado River Doctrine* analysis have applicability to a Section 2–619(a)(3) determination, the *Byer* court determined that the two provisions were not in conflict but rather complementary avenues for dismissal. 622 F.Supp. at 1384.

5. The guaranty provides that "[t]he liability of Guarantors ... is not conditioned or contingent upon the genuineness, validity, regularity or enforceability of the Loan documents [which include the note]" (¶ 4), and that Plaintiff "may enforce this Guaranty without the necessity of resorting to or exhausting any security or collateral or proceeding against Maker or any other guarantor ... (¶ 6).

language of the guaranty suggested that the Plaintiff had bargained for and received additional assurances that the loan would be repaid. *See, Mitsui Taiyo Kobe Bank Ltd. v. First Nat. Realty & Development Co., Inc.,* 788 F.Supp. 1007, 1009 (N.D.Ill.1992) (noting that a stay of the proceedings would effectively change the terms of the bargain by precluding the bank from proceeding on the guaranty independent of its action on the underlying loan.) Thus, the Magistrate Judge concluded that there was not a substantial likelihood that the Ohio action on the promissory note would dispose of the action on the guaranty.

Defendants object to the Magistrate Judge's determination that the cases are not parallel charging that the Magistrate Judge did not reach the merits of their argument. Defendants assert that a finding of fraud as to the promissory note in the Ohio action would preclude enforcement of the guarantees in the federal action.

What Defendants' argument neglects is that a determination of whether two actions are parallel does not require the Magistrate Judge to assess the merits of Defendants' assertion. Rather, a determination of whether two actions are parallel requires a finding that "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *See, Day,* 862 F.2d at 655, citing *Calvert Fire Ins.,* 600 F.2d at 1229 n. 1. The critical factor is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. *See, Day,* 862 F.2d at 656 citing, *Lumen Constr.,* 780 F.2d at 695.

In support of their position that, under Arizona law, a guarantor is released where the principal debtor has been released because of fraud, Defendants cite the Restatement of Security, § 118 (1941). Section 118 of the Restatement of Security provides: "Where the principal has been induced to assume an obligation by the fraud or duress of the creditor, the surety is not liable to the creditor." Defendants then admit· that they can find no Arizona case which has applied or

addressed § 118 of the Restatement of Security.[6]

As the guaranty explicitly states that it is not dependent on the validity of the note and as there is no known Arizona case applying § 118 of the Restatement of Security, this Court affirms the Magistrate Judge's conclusion that the Ohio action and the federal action are not parallel as there is not a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.

## CONCLUSION

For the foregoing reasons, the Magistrate Judge's Report and Recommendation is denied in part and affirmed in part. The Court holds that a federal court sitting in diversity should apply the *Colorado River doctrine* as opposed to Section 2–619(a)(3). As the Court finds that the present action and the Ohio action are not parallel, the Defendant's Motion to Stay the present action pending resolution of Case No. CV–229333 in the Court of Common Pleas, Cuyahoga County, Ohio is denied.

---

**6.** The Court finds Defendants' citation of *Georgia–Pacific Corp. v. Levitz,* 149 Ariz. 120, 716 P.2d 1057, 1059 (1986) inapplicable to the facts of the present case.